## PRESIDENTIAL CAPITAL CORPORATION *v.* ANTONIO REALE (15003)

PETERS, C. J., and CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued September 28—decision released December 27, 1994

*Richard P. Weinstein,* with whom, on the brief, were *Jennifer C. Jaff* and *Peter Rustin,* for the appellant-appellee (defendant).

*Michael D. O'Connell,* with whom, on the brief, was *Gary R. Brochu,* for the appellee-appellant (plaintiff).

BERDON, J. In this action for breach of contract for failure to pay a commission, the defendant appeals and

the plaintiff cross appeals from the judgment of the trial court rendered after a jury verdict for the plaintiff.[1] The jury returned a verdict for the plaintiff in the amount of $375,000. The trial court denied the defendant's motion for judgment notwithstanding the verdict but granted the defendant's motion for a remittitur. On the motion for remittitur, the trial court ordered that the verdict be set aside unless the plaintiff remit $225,000 of the verdict, thereby agreeing to a judgment of $150,000. This appeal and cross appeal raise three issues: (1) whether the plaintiff had standing to bring this action; (2) whether the defendant was contractually obligated to pay a commission to the plaintiff; and (3) if so, whether the trial court was correct in ordering the remittitur. We conclude that the plaintiff had standing and that there was an enforceable contract, but that the court should not have ordered the remittitur.

The following facts are not in dispute. The plaintiff, Presidential Capital Corporation, is a broker-dealer licensed to conduct business in the securities industry. As part of its business, the plaintiff solicits equity investors for various investments, including real estate syndications. Donald Motschwiller is the owner of the plaintiff.

Motschwiller learned of an investment opportunity involving the construction and operation of a hotel, casino and condominiums on an island known as Providenciales in a group of islands in the British West Indies known as Turks and Caicos (project). A cash investment of approximately $7.5 million was necessary to fund the project. Motschwiller first conducted "due diligence"—that is, an investigation of the project to determine whether it was feasible and whether it

---

[1] The appeal and the cross appeal from the judgment of the trial court were taken to the Appellate Court and we transferred both appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

was the type of an investment in which the plaintiff should become involved. After confirming the project's viability, Motschwiller surveyed the plaintiff's network of broker-dealers to determine whether they were aware of any investors who might be interested in participating in the project.

Anthony Newfield, part of the plaintiff's network of broker-dealers, indicated that the defendant, Antonio Reale, a client investor, was interested in being the single investor. In May, 1988, Motschwiller arranged for a meeting in Miami between the defendant and the developer, Thomas Manuel, to discuss the project. At the meeting, which was attended by Motschwiller, the defendant, the defendant's accountant, Manuel and other interested persons, the parties agreed that, subject to certain conditions, the defendant would be the single investor for the project. On June 10, 1988, the defendant became committed to invest $7.5 million as the single investor.

The plaintiff brought this action against the defendant, alleging that the defendant had promised to pay the plaintiff's agent, Motschwiller, a cash fee for introducing him to the project. The plaintiff sought as compensatory damages the "reasonable value" of its services, which the plaintiff alleged to be $375,000. The jury returned a verdict in favor of the plaintiff and awarded $375,000 in damages. The defendant then filed motions for judgment notwithstanding the verdict[2] and for a remittitur. The trial court denied the motion for judgment notwithstanding the verdict, but granted the motion for a remittitur in the amount of $225,000. The defendant appealed and the plaintiff cross appealed.

[2] Throughout his brief and at oral argument before this court, the defendant referred to this motion interchangeably as a motion for judgment notwithstanding the verdict and as a motion to set aside the verdict. Like the trial court, we will follow the language used by the defendant in the motion itself and treat it as a motion for judgment notwithstanding the verdict.

## I

First, the defendant claims that the plaintiff lacked standing to bring this lawsuit. Although this claim was not raised below, we address it on appeal because the claim implicates this court's subject matter jurisdiction.[3] *Orsi* v. *Senatore*, 230 Conn. 459, 470, 645 A.2d 986 (1994); *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 595, 473 A.2d 787 (1984).

"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Unisys Corp.* v. *Dept. of Labor*, 220 Conn. 689, 693, 600 A.2d 1019 (1991). The defendant bases his argument upon his claim that if there was any agreement to pay a commission, that agreement was between him and Newfield, not between him and the plaintiff. Therefore, according to the defendant, the plaintiff had no legal interest to be protected.[4]

---

[3] Although we typically are not bound to consider a claim that was not raised before the trial court, a challenge to the subject matter jurisdiction of a court may be raised at any time. *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 376–77, 568 A.2d 431 (1990).

[4] At oral argument, the defendant expanded this claim. He argued that even if he had agreed to pay for the services of the plaintiff, that agreement was between Newfield and the plaintiff as partners and the defendant. Apparently, without articulating it as such, the defendant claimed that Newfield, who testified at trial on behalf of the plaintiff, was an indispensable party. Therefore, the defendant argues, because Newfield was not a party, the trial court did not have subject matter jurisdiction. See *W. G. Glenney Co.* v. *Bianco*, 27 Conn. App. 199, 201–204, 604 A.2d 1345 (1992); W. Moller & W. Horton, Connecticut Practice—Practice Book Annotated, Superior Court Civil Rules (3d Ed. 1989) § 100, p. 264, comment, and (Sup. 1992) § 100, p. 63, comment. As we indicate in part III B of our opinion,

The defendant's claim is wholly without merit. The plaintiff's complaint alleged that the agreement was between the defendant and the plaintiff.[5] The jury returned a verdict for the plaintiff which, as we point out below, was supported by sufficient evidence.[6] Clearly, the plaintiff had an interest in the controversy sufficient not only to maintain legal standing, but to win its lawsuit.

Moreover, even if we were to conclude that the jury's verdict was not supported by sufficient evidence, that would not necessarily mean that the plaintiff lacked standing to bring its action in the first instance. "Standing is not shown never to have existed when a plaintiff loses his suit. Standing requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by *allegations* of injury. Similarly, standing exists to attempt to vindicate 'arguably' protected interests. *Ducharme* v. *Putnam*, 161 Conn. 135, 139, 285 A.2d 318 (1971); see also *Assn. of Data Processing Service Organizations* v. *Camp*, 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)." (Emphasis in original.) *Maloney* v. *Pac*, 183 Conn. 313, 321 n.6, 439 A.2d 349 (1981).

## II

The defendant next claims that the trial court erred in denying his motion for judgment notwithstanding

---

however, there was sufficient evidence at trial to support the jury's finding that the agreement was between the defendant and the plaintiff alone. Therefore, the defendant's argument is without merit.

[5] The complaint alleged the following: "The plaintiff, through one of its licensed agents did in fact introduce the defendant to the venture and was instrumental in facilitating a business agreement between the defendant and 'The Project.' " The court instructed the jury, without exception by the defendant, as follows: "[T]he plaintiff, Presidential Capital Corporation, is claiming that it, through its agent, Anthony Newfield and its president, Donald Motschwiller, introduced the defendant, Antonio Reale, to the Turks and Caicos project at the request of Thomas Manuel."

[6] See part II of this opinion.

the verdict. He advances two grounds in support of his claim. First, he argues that there was insufficient evidence for a reasonable jury to conclude that the defendant had made an enforceable promise to pay the plaintiff. More specifically, he argues that any promises upon which the plaintiff relied to establish an oral agreement were too vague. Second, the defendant argues that, as a matter of law, there could be no enforceable contract in this case because neither party agreed upon the amount that the defendant was obligated to pay the plaintiff for its services. We disagree with both contentions.

We begin our analysis by noting our limited scope of review. "[O]ur review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . *John T. Brady & Co.* v. *Stamford*, 220 Conn. 432, 440–41, 599 A.2d 370 (1991); *Iseli Co.* v. *Connecticut Light & Power Co.*, 211 Conn. 133, 140, 558 A.2d 966 (1989)." (Citations omitted; internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 83, 646 A.2d 1308 (1994).

Because the defendant claims that the jury could not reasonably or legally have found an enforceable contract, we must first consider the necessary elements of such an agreement. To be enforceable, an agreement "must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 313, 528 A.2d

1123 (1987). "Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact" for the trier of facts. *Rahmati* v. *Mehri*, 188 Conn. 583, 587, 452 A.2d 638 (1982). "A manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined." 1 Restatement (Second), Contracts § 22 (2) (1981); *Rahmati* v. *Mehri*, supra, 587 and n.4.

There was substantial testimony regarding what had occurred at the Miami meeting. Both Motschwiller and Newfield testified that they had reminded everyone in attendance, including the defendant, that the plaintiff would be owed a fee if the defendant and the developer reached an agreement. They also testified that the defendant initially had balked at paying a commission. Motschwiller testified, however, that after the defendant had spoken with the developer, the defendant said he "would be responsible for paying the commission." Newfield further testified that "Mr. Reale had said, 'I'll take care of the commissions' because it didn't seem like anybody else would agree to do that."

The jury was entitled to credit the testimony of Motschwiller and Newfield. *Fleming* v. *Garnett*, supra, 231 Conn. 84; *Berry* v. *Loiseau*, 223 Conn. 786, 821, 614 A.2d 414 (1992). Accordingly, we conclude that the evidence was sufficient to permit a jury reasonably to find that the defendant had promised to pay the plaintiff a commission if the defendant became committed to the project as an investor. Indeed, at oral argument before this court, the defendant conceded this point.

Moreover, the defendant's promise to pay a commission is not made unenforceable merely because he did not include the amount of the commission. We have long held that an agreement will not be rejected if the missing terms can be ascertained, either from

its express terms or by fair implication. *Augeri* v. *C. F. Wooding Co.,* 173 Conn. 426, 430, 378 A.2d 538 (1977).[7] In a case such as this, where the plaintiff and the defendant have agreed that the defendant will pay for the plaintiff's services but the agreement is silent as to the amount of compensation, the court may conclude that the defendant contemplated paying a reasonable fee.[8] *Pearl* v. *Nelson,* 13 Conn. App. 170, 172, 534 A.2d 1257 (1988) ("[h]ere, there was an agreement for services to be performed and, since the fee was not fixed, the agreement contemplated a reasonable fee"); see 1 S. Williston, Contracts (4th Ed. Lord 1990) § 4.22, p. 518 ("a promise that one shall be well paid or providing for sufficient monies is interpreted as a promise for reasonable compensation"); J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 2-9, p. 57 ("[i]f A and B agree that A will perform a service for B and no mention is made of the price to be paid, it will be concluded that the parties intended that a reasonable price should be paid and received").

Our conclusion in this regard is consistent with the holdings of courts in other jurisdictions. These courts,

---

[7] Commentators and other courts have followed this approach as well. The supplied terms, referred to by Professors Calamari and Perillo as "gap-fillers," " " 'are implied not because they are just or reasonable, but rather for the reason that the parties must have intended them and have only failed to express them . . . or because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which parties, as fair and reasonable [persons], presumably would have agreed if, having in mind the possibility of the situation which had arisen, they contracted expressly in reference thereto.' " J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 2-9, p. 57, quoting *Barco Urban Renewal Corp.* v. *Housing Authority,* 674 F.2d 1001, 1007 (3d Cir. 1982); see also 2 Restatement (Second), Contracts § 204 (1981) ("[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court").

[8] This holding renders moot the defendant's claim that the trial court was incorrect when it instructed the jury that it could determine damages based upon the reasonable value of the plaintiff's services. For the reasons stated in this opinion, we conclude that the trial court correctly instructed the jury.

when faced with a promise to pay for services but no agreed price, have nevertheless found the contract to be enforceable. See, e.g., *Olberding Construction Co.* v. *Ruden*, 243 N.W.2d 872, 875 (Iowa 1976) ("where there is no agreement as to the amount of the compensation, the law implies a promise to pay reasonable compensation"); *Dixon* v. *Kittle*, 109 Ohio App. 257, 259, 164 N.E.2d 806 (1959) ("[w]here labor or materials are furnished by request and no price is agreed on, the law will imply an agreement to pay what they are reasonably worth" [internal quotation marks omitted]). Indeed, at least one court has applied this rule in order to determine the rate of commission a client was to pay his broker. See *Charlotte Aircraft Corp.* v. *Braniff Airways, Inc.*, 497 F.2d 1016, 1017 (5th Cir. 1974) (if "there is no understanding as to a fixed rate of commission, the situation tends to require an inference that the grantor of the right to sell obligated himself to pay a reasonable commission").

Accordingly, the trial court properly denied the defendant's motion for judgment notwithstanding the verdict.

### III

Finally, both parties challenge the trial court's order that the plaintiff file a remittitur of $225,000, which would reduce the amount of the plaintiff's recovery to $150,000. The plaintiff, on cross appeal, argues that the court acted improperly in ordering any remittitur. The defendant, on the other hand, argues that if the court correctly found that the parties had agreed to a commission of $150,000, it should have ordered a remittitur of $300,000 in order to reduce the plaintiff's recovery to $75,000. The defendant bases his argument on his claim that any promise he made was to the plaintiff and Newfield as partners. The defendant argues,

therefore, that the plaintiff is entitled to only one half of a $150,000 commission, or $75,000. We shall address the claims seriatim.

## A

We review the remittitur issue in the context of the state constitutional right to trial by jury, which "includes the right to have the jury, rather than the court, pass upon the factual issue of damages, when there is room for a reasonable difference of opinion among fair-minded [persons] as to the amount which should be awarded." (Internal quotation marks omitted.) *Seals* v. *Hickey*, 186 Conn. 337, 351, 441 A.2d 604 (1982). The trial court may order a remittitur if it concludes, as a matter of law, that the verdict is excessive. General Statutes § 52-216a;[9] *Berry* v. *Loiseau*, supra, 223 Conn. 808–809. The trial court, however, did not find that the jury's verdict of $375,000 was excessive. Rather, it predicated its conclusion that a remittitur should be ordered on two premises: (1) that it had improperly instructed the jury on damages; and (2) that the parties had agreed to the measure of damages as being $150,000. Neither of these premises is correct.

First, the trial court concluded that it had improperly instructed the jury when, in determining the reasonable value of the plaintiff's services, the court allowed the jury to consider the customs and practices of the trade. According to the court, there was no evidence that "the parties agreed that customs and practices would be the test for determining the amount of the commission." We disagree with the trial court's analysis and conclude that the jury was properly instructed on the issue of damages.

---

[9] General Statutes § 52-216a provides in pertinent part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial."

It is true that before custom and usage of the trade can supplement or qualify an agreement, each party must know or have reason to know of that usage. See *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 38–39, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986); 2 Restatement (Second), Contracts § 221 (1981).[10] In this case, however, the instructions to the jury on custom and usage as they pertained to damages did not supplement or qualify the agreement. The court simply instructed the jury that if it found that the plaintiff and the defendant had entered into a contract under which the defendant was to pay the plaintiff a commission, and the defendant breached that agreement, the jury should determine the damages based upon the reasonable value of the plaintiff's services. As we stated previously, that term of the contract—the reasonable value of the services— was implied not as a result of the custom or usage of the industry but by operation of law. The court further instructed the jury that, as evidence of the reasonable value of the plaintiff's services, it could take into consideration the "rates of compensation . . . ordinarily paid according to the customs and practices of the securities industry for the performance of like services."[11]

---

[10] Section 221 of the Restatement (Second) of Contracts (1981) provides in part: "An agreement is supplemented or qualified by a reasonable usage with respect to agreements of the same type if each party knows or has reason to know of the usage and neither party knows or has reason to know that the other party has an intention inconsistent with the usage."

[11] The trial court instructed the jury on damages in pertinent part as follows: "Now, let's discuss damages. You get to the question of damages only if you first decide that there was a binding, oral contract. And, second, that the defendant breached the contract. If you conclude there was a valid contract and the defendant broke his contract with the plaintiff it will then be necessary for you to determine the amount of the damages the plaintiff should recover. . . . If you decide that the plaintiff is entitled to recover for its services the amount of that recovery is determined by their reasonable value.

"Now, there was some testimony that certain rates of compensation are ordinarily paid according to the customs and practices of the securities indus-

In determining a reasonable value, a court may properly instruct the jury to consider the customs and practices of the profession or industry. See J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) § 3-7, p. 118 ("[i]f there is sufficient evidence of price based on . . . usage of trade, this will determine 'reasonable price' whether or not that price is equivalent to the market price"). It is not necessary for both parties to be consciously aware of the trade usage. Id., § 3-3, p. 98. The court acted properly, therefore, when it allowed the jury to consider the custom and usage of the profession in determining the amount of the reasonable commission owed to the plaintiff.

try for the performance of like services. Relevant customs and practices may be established by the testimony of witnesses who have had experience in the transactions involved and who can testify to the facts constituting the alleged custom or usage. In order to render the testimony of a witness as to a general custom relevant and competent it must appear that he has full knowledge and sufficient experience on the subject about which he speaks. Where evidence of a trade custom or usage is pertinent to the issues of a case, as it is in the case before you, then evidence of a trade custom or usage may be proved by the testimony of witnesses who are engaged in the particular trade and familiar with its practices. A custom or usage can only be proved by numerous instances of actual practices and not by the mere opinion of a witness. Proof of isolated instances in which a particular practice was followed does not establish custom and usage.

"If you find that the plaintiff has proved, by a fair preponderance of the evidence, what the customs and practices of the securities industry was, then payment to the plaintiff at that rate could be the sum which he would be entitled to recover for people ordinarily pay for services what they are reasonably worth to them. However, all the circumstances should be taken into consideration in determining what is the reasonable value of the plaintiff's services. Reasonable value means such a sum of money as is fair in view of the nature of the services performed, any special problems or difficulties involved, the skill and judgment required and used, and any particular qualifications which the party rendering the services had and were required for the work he has to do, the results he in fact accomplished, and any other circumstances that you find proven which are relevant and material in the determination of what was the reasonable value of the services.

"In brief, the measure of the plaintiff's damages is the reasonable value of its services and the plaintiff has the burden of proof by a fair preponderance of the evidence to show you what the reasonable value of its services was. And you take into consideration all the surrounding circumstances in determining what the reasonable value of the plaintiff's services was."

Second, the trial court's premise that the plaintiff and the defendant agreed to what would constitute reasonable compensation is not supported by the evidence. Although subsequent to the defendant's commitment to become the single investor the parties discussed a settlement of $150,000, *both* the plaintiff and the defendant agree on appeal that they did not enter into such an agreement because they could not agree on the time for payment. The trial court, therefore, was not correct in finding an agreement in the amount of $150,000 or in ordering a remittitur of $225,000 to establish a judgment for the plaintiff in that amount.

B

The defendant argues that the trial court should have ordered a remittitur in the amount of $300,000. According to the defendant, the trial court's order of a remittitur of $225,000 was based on the court's determination that the defendant had promised to pay a $150,000 commission. The defendant argues, however, that any promise he made to pay a commission was a promise to the plaintiff and Newfield as partners. The defendant argues, therefore, that the trial court should have ordered a remittitur of $300,000 in order to reduce the plaintiff's judgment to $75,000, the amount it alone was entitled to receive.

The defendant's argument fails for two reasons. First, as we have indicated, the trial court's order for any remittitur was improper. Second, the trial court properly rejected the defendant's argument that his promise was to Newfield and the plaintiff as partners. This case was tried on the theory that Newfield was an agent, not a partner, of the plaintiff, and the court so instructed the jury. We ordinarily decide the appeal on the theory on which the case was tried and determined in the trial court. See, e.g., *Lashgari* v. *Lashgari*, 197 Conn. 189, 196, 469 A.2d 491 (1985).

The jury returned a verdict for the plaintiff based on the agency theory. It is properly the role of the jury, as the finder of fact, to determine to whom the defendant owed the commission and on what terms. See *Cohen* v. *Holloways', Inc.*, 158 Conn. 395, 409–10, 260 A.2d 573 (1969). The jury's finding that the agreement was between the defendant and the plaintiff alone was supported by sufficient evidence. Motschwiller, for example, testified at trial that the discussion in Miami centered around the fact "that a commission is to be paid to [the plaintiff]." Newfield also testified that if the defendant had paid him a commission, he would have turned it over to the plaintiff. The trial court, therefore, was correct in refusing to order a remittitur in the amount of $300,000, which would have reduced the plaintiff's verdict to $75,000.

Accordingly, we conclude that the plaintiff had standing to bring this action and we affirm the trial court's denial of the motion for judgment notwithstanding the verdict. The judgment is reversed with respect to the order of remittitur and the case is remanded with direction to render judgment for the plaintiff on the verdict of $375,000.

In this opinion the other justices concurred.