[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a dispute between two attorneys over the allocation of an attorney's fee. The plaintiff brought this action in five counts against the defendant claiming that the defendant wrongfully refused to pay him a portion of the attorney's fee resulting from the settlement of an underlying personal injury action. On September 21, 1999, a jury found the issues in this matter for the plaintiff on each of the five counts of the complaint and awarded the plaintiff damages in the amount of $328,469.14.
The defendant has filed a motion to set aside the verdict, a motion for judgment notwithstanding the verdict, and a motion in arrest of judgment on the fifth count. With respect to his motion to set aside the verdict, the defendant has raised a raft of issues including that there was insufficient evidence of the defendant's bad faith and insufficient evidence on the CT Page 16726 plaintiff's breach of contract and third party beneficiary claims. The defendant also asserts, inter alia, that the court should enter judgment for him notwithstanding the verdict because there was insufficient evidence of bad faith. For the following reasons, the court agrees with the defendant that the verdict should be set aside and judgment should enter in favor of the defendant notwithstanding the verdict.
The standard for determining whether to set aside a verdict is well-settled. "Litigants have a constitutional right to have factual issues resolved by the jury. This right encompasses the right to have the jury and not the court decide issues of fact as to which reasonable people may reach different conclusions. Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Citations omitted; internal quotation marks omitted.) Berry v. Loiseau, 223 Conn. 786, 807-808 (1992). The verdict will be set aside and judgment directed only if the court finds that the jury could not reasonably and legally have reached their conclusion. Bound Brook Association v. Norwalk,198 Conn. 660, 667 (1986).
In the present case, the evidence viewed in the light most favorable to the plaintiff established the following. On October 24, 1989, Richard Aldrich sustained serious injuries in a construction accident. The plaintiff was retained by Aldrich to represent him in a personal injury action and a worker's compensation claim concerning his injuries. Aldrich orally agreed that he would pay the plaintiff 25 per cent of his recovery as an attorney's fee. Although the plaintiff knew that Connecticut law[1] required that contingency fee agreements be in writing, the plaintiff neglected to have his contingency fee agreement with Aldrich reduced to writing.
The plaintiff represented Aldrich in his personal injury action from November 1989 through January 1994. In November 1993, the plaintiff received a settlement proposal in the personal injury action which had a present value totaling $1,585,000. In December, he discussed the proposed settlement with Aldrich.
Shortly, after his meeting with the plaintiff, Aldrich contacted the defendant concerning his personal injury action. According to Aldrich, the defendant told him that he could get CT Page 16727 Aldrich more money in his personal injury action if he were retained to represent Aldrich. Aldrich told the defendant that, while he had an oral agreement to pay 25% of any recovery to the plaintiff as an attorney's fee, he did not have a written contingency fee agreement with the plaintiff. Aldrich agreed to have the defendant represent him in the pending personal injury on the condition that the plaintiff's fee be "taken care of." In January 1994, Aldrich discharged the plaintiff and retained the defendant to represent him.
In a letter dated January 18, 1994, the defendant asked the plaintiff to turn over his files to the defendant. The defendant also requested an itemized list of any out-of-pocket expenses incurred by the plaintiff and the amount the plaintiff claimed was due and owing as his fee. The letter further stated as follows: "I will either agree with your claims and forward to you a check in payment thereof when the above matters are resolved or will hold any fee in escrow pending a determination of the amount due you." On January 19, 1994, the plaintiff responded in a letter attached to his files which stated, "With respect to my fee for services rendered to date, I propose that such fee should equal fifty (50%) percent of the maximum fee permitted under Connecticut law with respect to the pending gross settlement offer. I believe this proposal is well in keeping with local practice with respect to transfer of personal injury cases. Please advise."
In April of 1994, the defendant settled the personal injury action on behalf of Aldrich for $1,750,000 and subsequently received an attorney's fee of $335,000. The jury could have reasonably found that 85% to 95% of the work performed in connection with Aldrich's personal injury action was performed by the plaintiff.
The defendant placed the fee in an escrow account and it remained in such an account throughout the subject litigation. In a letter to the plaintiff dated May 31, 1994, the defendant requested that the plaintiff send him a copy of the plaintiff's written fee agreement with Aldrich, the amount of the fee that the plaintiff claimed was due, his method of calculating the fee and all documentation supporting the plaintiff's claim. The plaintiff, in response to the defendant's request for documentation, sent the defendant a listing of a portion of the hours that he had spent representing Aldrich. Despite repeated demands, the defendant refused to pay any portion of the CT Page 16728 attorney's fee recovered in the personal injury action to the plaintiff.
The plaintiff filed an action against the defendant in five counts[2] claiming that the defendant wrongfully failed to pay to the plaintiff a portion of the attorney's fee which the defendant had received in the Aldrich personal injury action. The defendant subsequently moved for summary judgment claiming that the plaintiff was barred from any recovery because his contingency fee agreement with Aldrich was not in writing as required by Connecticut law. The court, Licari, J., denied the defendant's motion for summary judgment. Judge Licari held that the general rule set forth in Silver v. Jacobs, 43 Conn. App. 184
(1996) that an oral contingent fee agreement in a personal injury action is not enforceable contains two exceptions: where a successor attorney acts in bad faith and where the client waives the protections of General Statutes § 52-251c. Judge Licari found that the plaintiff's allegations raised genuine issues of fact as to whether the defendant acted in bad faith and whether Aldrich waived his statutory right to a written fee agreement.
At the close of the plaintiff's case at trial, the defendant moved for a directed verdict on the grounds that the evidence submitted by the plaintiff was insufficient as a matter of law on the issue of the defendant's bad faith.[3] After hearing argument from both counsel, the court reserved decision on the defendant's motion.
The defendant asserts in his motion to set aside the verdict that the verdict should be set aside on the following grounds: (1) no bad faith exception exists to the rule that there can be no recovery without a written contingency fee agreement; (2) the evidence is insufficient as a matter of law on the issue of the defendant's bad faith; (3) the evidence is insufficient as a matter of law on the plaintiff's claims of breach of contract, third party beneficiary, and violation of the Connecticut Unfair Trade Practices Act; (4) errors in the court's evidentiary rulings and in the court's refusal to dismiss the Connecticut Unfair Trade Practices Act claim; (5) errors in the court's charge to the jury; (6) the court's refusal to submit to the jury particular interrogatories requested by the defendant; (7) the court's refusal to advise counsel and the parties on the applicable law controlling the issues of bad faith and waiver; and (8) the acceptance by the court of an inconsistent verdict. After reviewing the evidence in the light most favorable to the CT Page 16729 plaintiff, the court agrees with the defendant that the evidence was insufficient to allow the jury to reasonably and legally find that the defendant acted in bad faith.
The plaintiff in his memorandum in opposition to the defendant's motion for judgment notwithstanding the verdict asserts that the evidence established four ways in which the defendant acted in bad faith: (1) when he advised Aldrich that he could get him more money even though he knew nothing about Aldrich's case at the time he made the statement; (2) when he entered into an agreement with Aldrich to take care of the plaintiff's fee, knowing all the while that he would not honor the agreement because of the plaintiff's failure to obtain a written contingency fee agreement; (3) when he offered, through his letter of January 18, 1994, to pay the plaintiff some fee, knowing all the while that he would not honor the agreement because of the plaintiff's failure to obtain a written contingency fee agreement; and (4) when he advised Aldrich, for the purpose of soliciting him from the plaintiff, that he would charge him a fee less than the plaintiff was charging, knowing all the while that he was going to charge Aldrich the maximum statutory fee.
"Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." (Internal quotation marks and citations omitted.) Habetz v. Condon,224 Conn. 231, 237 (1992).
The plaintiff claims at the outset that the defendant acted in bad faith by telling Aldrich that he could recover more money in the personal injury action at a time when the defendant knew nothing about the case. It is inaccurate to assert that the defendant knew nothing about the Aldrich matter. Aldrich's undisputed testimony at trial was that he had discussed the case with the defendant and had sent the defendant a copy of the plaintiff's settlement proposal approximately one week prior to the defendant stating that he could procure a larger sum. While one could argue that the defendant's statement was unreasonable or possibly negligent given the limited information at his disposal[4], it does not rise to the level of bad faith. In this instance, the defendant's conduct does not amount to fraud, CT Page 16730 intentional misrepresentation or display a sinister motive. SeeHabetz v. Condon, supra, 224 Conn. 237.
The plaintiff also claims that the defendant engaged in bad faith when he entered into an oral agreement with Aldrich to take care of the plaintiff's fee and when he offered, through his letter of January 18, 1994, to pay the plaintiff some fee, knowing all the while that he would not honor either agreement because of the plaintiff's failure to obtain a written contingency fee agreement. The evidence submitted at trial, even when viewed in the light most favorable to the plaintiff, does not support these claims.
The essence of the plaintiff's claims is that the defendant intentionally misled Aldrich and the plaintiff into believing that he would pay the plaintiff his fee when the defendant never intended to do so. Even viewing the evidence in its most favorable light to the plaintiff, the jury could not have reasonably concluded that the defendant never intended to pay a portion of the attorney's fee to the plaintiff.
After being retained by Aldrich, the defendant sent the plaintiff a letter dated January 18, 1994, asking that the plaintiff provide him with the file in the Aldrich matter and requesting an itemized list of any out-of-pocket expenses incurred by the plaintiff and the amount the plaintiff claimed was due and owing as his fee. The letter further stated that, "I will either agree with your claims and forward to you a check in payment thereof when the above matters are resolved or will hold any fee in escrow pending a determination of the amount due you."
The procedure outlined in the defendant's letter adheres to the approach recommended by the Connecticut Bar Association Committee on Professional Ethics in situations involving the transfer of files in contingency fee cases. In Revised Formal Opinion No. 31 (1988), the Committee on Professional Ethics of the Connecticut Bar Association held that a discharged lawyer in a contingency fee case may not retain the file if (1) there is an agreement with the client or successor attorney concerning payment of fees and expenses or (2) the successor counsel provides the discharged lawyer with a letter that he will hold in his client's funds sufficient proceeds from the settlement to pay the discharged lawyer what he would have been entitled to under his contingency fee agreement until the fee dispute is resolved by a court or otherwise. In this case, the defendant stated that CT Page 16731 he would either agree to pay the plaintiff's requested fee or hold funds in escrow until any dispute over the fee is resolved. Since the defendant did not agree to the fee requested by the plaintiff, he placed the entire attorney's fee in escrow pending a resolution of the dispute. The defendant did exactly what he said he would do in his letter and precisely what was expected of him under Revised Formal Opinion No. 31.
The plaintiff points as evidence of the defendant's bad faith to the fact that the defendant knew before he sent the January 18, 1994 letter that the plaintiff did not have a written contingency fee agreement with Aldrich. There is nothing dishonest or sinister about a successor attorney, knowing there is no written contingency fee agreement, informing the initial attorney that he will either agree to his fee or hold it in escrow pending resolution of any dispute. This is not a situation where one party knew of a defect beforehand and concealed that defect or induced an ignorant party into entering into a defective agreement in order to avoid his contractual obligations later. See Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240,249 (1992). (The court noted in finding insufficient the plaintiff's claims of bad faith that the plaintiff contractor did not allege that defendant homeowners knew of the statutory violation beforehand or drafted the agreement in violation of the Home Improvement Act to subsequently escape their contractual obligations.) The defendant played no role in the plaintiff's failure to procure a written contingency fee agreement in violation of Connecticut law and the plaintiff was well aware of this statutory violation prior to his dealings with the defendant.
Moreover, it was not clear at the time of the transfer of the file from the plaintiff to the defendant that the plaintiff's oral contingency fee agreement was unenforceable. The Appellate Court case, Silver v. Jacobs, 43 Conn. App. 184 (1996), which established that proposition, was not released until September 17, 1996, more than two and one-half years after the defendant's January 18, 1994 letter to the plaintiff.[5] The defendant could not have definitively known that the plaintiff's failure to obtain a written fee agreement with Aldrich would relieve the defendant of any obligation to pay the plaintiff a portion of the attorney's fee.
The evidence also does not reasonably support a finding that the defendant had an enforceable agreement with Aldrich to pay CT Page 16732 the plaintiff a portion of the attorney's fee. The only evidence submitted at trial of the defendant's agreement with Aldrich to pay the plaintiff his fee was the testimony of Aldrich that he agreed to hire the defendant on one condition: that the plaintiff "had to be taken care of." "Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements. Presidential Capital Corp. v. Reale,231 Conn. 500, 506, 652 A.2d 489 (1994); 1 Restatement (Second), Contracts § 33, comment (e), p. 94 (1981)." (Internal quotation marks omitted.) Suffield Dev. Assoc. Ltd. v. SocietyFor Savings, 243 Conn. 832, 843 (1998). A single statement that the plaintiff's fee had to be "taken care of" is insufficient as a matter of law to form a binding contract. See Dunham v. Dunham,204 Conn. 303, 313 (1987) (In which the court held that multiple statements by the defendant that he would "take care" of the plaintiff with respect to a specific piece of property failed to constitute an enforceable promise to convey that property to the plaintiff.)
The final claim of the plaintiff is that the defendant engaged in bad faith when he advised Aldrich, for the purpose of soliciting him from the plaintiff, that he would charge him a fee less than the plaintiff was charging, knowing all the while that he was going to charge Aldrich the maximum statutory fee. The jury, however, could not have reasonably found that the defendant told Aldrich that he would charge him less than that charged by the plaintiff or less than that allowed under § 52-251c. The defendant sent to Aldrich a written contingency fee agreement, which was subsequently signed by Aldrich, that set forth the schedule contained in § 52-251c for the computation of the defendant's fee. Aldrich admitted in this testimony that he made a mistake interpreting the schedule when he believed that the defendant would be charging him only a 10% contingency fee.
Moreover, the plaintiff seeks to use the alleged bad faith conduct of the defendant toward Aldrich as a basis for avoiding the application of the rule that the absence of a written contingency fee agreement bars the collection of an attorney's fee. While there is authority for the proposition that one party to a contract who has engaged in bad faith actions toward the other party to the contract may not repudiate the contract based on a statutory violation, Habetz v. Condon, 224 Conn. 236 (1992), the plaintiff can point to no authority extending its application to bad faith conduct toward third parties.[6] General Statutes § 52-251c embodies a strong public policy to protect clients CT Page 16733 from excessive legal fees.[7] Perkins Mario, P.C. v.Annunziata, 45 Conn. App. 237, 240-41 (1997). Given the importance of this public policy, it is inappropriate to widen the exception to the prohibition on fee collection when the statute is violated to conduct by the successor attorney toward third parties who were not privy to the fee splitting agreement between the discharged attorney and successor attorney that is sought to be enforced.
This court is fully aware that the plaintiff has a constitutional right to have the jury resolve factual disputes and that the court should not lightly set aside a verdict reached unanimously by a jury. But the court also has the obligation to set a verdict aside "where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles."Purzycki v. Fairfield, 244 Conn. 101, 106-107 (1998). This is such a case.
The court is firmly convinced that the jury was inappropriately swayed by the perceived unfairness of the rule of law that prevents a lawyer from recovering any fee when a contingency fee agreement is not in writing. In this case, the jury could not abide a result that enabled an attorney who performed 5% to 15% of the work to recover 100% of a $335,000 fee and allowed an attorney who performed 85% to 95% of the work to receive nothing. Instead, the jury chose the only escape hatch open to them and found that the defendant had engaged in bad faith despite the insufficiency of the evidence supporting that finding. Neither this jury nor this court may sidestep the law because we perceive it to be unfair.
Since the verdict must be set aside, the court must now determine whether to "order a new trial or direct the entry of judgment as if the requested verdict had been directed." Practice Book § 16-37. "This discretion should be exercised in favor of an order for a new trial if circumstances for which a party is not at fault have resulted in his failure to present the evidence which is lacking in his case and it appears that the necessary evidence will in reasonable probability be available on a retrial." Robinson v. Southern New England Telephone Co.,140 Conn. 414, 421 (1953). See also A-G Foods, Inc. v. PepperidgeFarm, Inc., 216 Conn. 200, 220 (1990) and Masterson v. Atherton,149 Conn. 302, 316 (1962). The plaintiff does not claim and there is no reason to believe that he has additional evidence of his CT Page 16734 bad faith claim that would be available at a new trial.
For the foregoing reasons, the defendant's motion to set aside the verdict and motion for judgment notwithstanding the verdict are hereby granted. The plaintiff's verdict is set aside and judgment is entered in favor of the defendant.
BY THE COURT
Judge Jon M. Alander