[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this claim against the defendants in a five (5) count complaint alleging damages as a result of the deferred compensation plans presented for its board of directors. It is alleged that Michael Millman, an employee of the defendant, T.R. Paul, in 1984 presented the CT Page 14896 plans for those directors who wished to participate to defer their director's fees for a period of four (4) years for the payment of benefits at their retirement. The retirement benefits would be funded from life insurance policies on the lives of said directors for which the bank would be the owner and beneficiary and would pay for such insurance policies from the deferred fees, dividends of such policies or by the loan value of the policies. The plans proposed would cost the bank nothing since the plans were self-funded. In 1988 a second set of deferred compensation plans were proposed and the only change was in requiring five (5) years of deferred fees instead of four (4). The plaintiff alleged that the defendants caused it damages because the plaintiff has not been able to pay the premiums for the policies from the deferred fees but has had to take loans on the policies which has deflated the policies to such an extent that they are unable to fund the retirement benefits.
Both defendants have filed motions for summary judgment and the Court, Beach J., after hearing said motions, granted summary judgment as to the defendant, New England Mutual Life insurance Company, on all counts and as to the defendant, T.R. Paul, Inc., on all but the first count.
Subsequently, the plaintiff and remaining defendant have withdrawn the jury claim and agreed to proceed on a bifurcated bench trial, whereby the issue of liability would be tried first, and the issues of damages would be considered thereafter.
The parties presented a stipulation, Plaintiff's Exhibit 1, that the defendant acted through its employee, Michael L. Millman from 1981 through 1994 who was a licensed agent with New England Mutual Life Insurance Company; that the defendant offered a range of pension services including expertise such as retirement plans described in the complaint and one such employee was Millman; that the plaintiff entered into contracts with its participating directors in a Directors Voluntary Deferral Plan (DVDP) substantially similar to Plaintiff's Exhibit 3
(defendants' proposal of the DVDP); that the plaintiff purchased life insurance policies from New England Mutual Life Insurance Company insuring the lives of all of the directors who participated with Directors Voluntary Deferral Plan which policies are substantially similar to Plaintiff's Exhibit 13 and that, as a result of the plaintiff's purchase of said policies defendant was paid a commission by New England Mutual Life Insurance Company.
Chester Sledzik, a director of the bank in 1984 was approached along with the other directors by Millman concerning DVDP at the bank. Millman represented that the directors could have increased retirement benefits from a deferred payment of their director's fees and a consequential tax savings without any cost to the bank under the proposal presented to them CT Page 14897 in 1984. Plaintiff's Exhibit 2. Sledzik never asked the mechanics of the plan except that he understood that he would be required to defer his director's fees for four (4) years and at age 65 would receive a retirement benefit for ten (10) years in excess of the deferred fees and at a time when his income would be reduced at a lower tax rate. He understood the bank would provide agreements to provide the plan which would not cause any further cost than the deferred fees. The plan would provide funding from life insurance on each of its directors. SeePlaintiff's Exhibit 3.
John Medvec, a vice-president and controller of the bank in 1984, testified that he was present at the presentation of the proposal of a DVDP by Millman and that he relied on that proposal to have the bank enter into agreements with the directors. Plaintiff's Exhibit 3. He received a communication from Millman about the increase in the second phase of the DVDP in the amount of deferred fees from four (4) years to five (5) years because of a change in the tax law but was assured it would not cause a change in the bank's liability. See Plaintiff's Exhibit5. He was concerned with the cost of the plan to the bank when he was presented a bill for premiums in 1993. Plaintiff's Exhibit 12. This concern was incorporated in a letter to T.R. Paul from the bank when presented with further invoices for premiums in subsequent years.Plaintiff's Exhibit 7. The dividends had never been mentioned before this letter of Millman dated January 25, 1993, and he had never considered an impact on the bank's liability caused by a decrease in dividends. He was aware that the funding was to be life insurance policies on the directors' lives which policies were to be owned by the bank and the bank would be beneficiary for the purpose of funding the retirement benefits. He believed the dividends were at a fixed rate although not told the amount of the dividends. The insurance company to be used was learned when the applications were presented. The checks from the deferred fees were made out to T.R. Paul until the requests for additional payments for premiums from 1993 on and then they were made out to New England Mutual Life Insurance Company at the request of T.R. Paul.
The defendant made a motion to dismiss on various grounds and the Court took the motion under reservation and the defendant offered Robert Levy, president of T.R. Paul as a witness. He testified that he has been the president since 1974 and doesn't recall receiving any checks from the plaintiff except those received in 1993 made out to New England. T.R. Paul accepted commissions in accordance with Defendant's Exhibit A.
The motion to dismiss addressed (1) the fact that the plaintiff did not allege any action against the defendant but only against New England Mutual Life Insurance Company; (2) that no contract was alleged independent of the New England policies; (3) that any contract claimed is CT Page 14898 time-barred; and (4) that any contract claimed in Count One of its Amended Complaint is barred by the Statute of Frauds.
 I.
The defendant has argued that Count One of the Amended Complaint dated March 12, 1999 alleges that T.R. Paul was an agent of New England at all times relevant to the claim and therefore was never alleged as other than an agent of New England. The language of Count One makes clear that "the offer" of T.R. Paul was accepted and its "breach" caused the plaintiff damage. Further the case was proceeding on only Count One and only as against T.R. Paul, after the Court's granting of the motions for summary judgment. Considering the liberality for amending the pleadings to the facts under P.B. 10-62, the failure to make objection earlier waives the variance if there is such. Acampora v. Ledewitz, 159 Conn. 377, 380.
 II.
Although the defendant claims there was no evidence of a contract with the plaintiff other than the purchase of life insurance policies from New England, the plaintiff has produced a proposal by the defendant of a DVDP for members of the directors of the plaintiff. Plaintiff's Exhibit 2. The proposal states "the plan is designed to cost the corporation no more than if the fees had not been deferred" which is consistent with the testimony of Sledzik and Medvec that the insurance policies would be self-funded after the payment of the deferred directors' fees. The agreement between the plaintiff and each of its directors, Plaintiff's Exhibit 3
incorporated the principles of the DVDP and the funding vehicle was put in place by the presentation of applications by Millman to the plaintiff for insurance on the lives of the participating directors. SeePlaintiff's Exhibit 4. The defendant stipulated that it offered a range of pension services and that Millman, its employee, had expertise in the service of the DVDP as offered by Millman to the plaintiff The defendant through its president, Robert Levy, offered that the only consideration received by the defendant was the commissions from the premium in accordance with the Commission's Agreement with New England, Defendant'sExhibit A. The plaintiff was purchasing a plan to pay retirement benefits to its directors which was to be funded from life insurance policies on their respective lives. These policies were to be purchased from deferred director's fees without any further cost to the plaintiff. The policies were estimated by Millman to self-fund future payments of premiums and benefits from the dividends and loan values. A manifestation of mutual assent may be made even though the moment of formation cannot be determined. Presidential Capital Corp. v. Reale, 231 Conn. 500, 507. Both parties contemplated the consideration for such service was the commissions received by the defendant from the purchase of the policies. CT Page 14899 The parties' intentions are manifested by their acts and words from which the Court finds essential to determine whether there is a contract and the terms thereof. Finley v. Aetna Life Casualty Co., 202 Conn. 190,199.
The plans as proposed by Millman intended to be self-funded and avoid any further cost to the defendant. Both Medvec and Sledzik testified that that was their intent and that Millman stated that the plans would not cost the plaintiff anything but the deferred fees of the directors. The defendant argues that there was no guarantee as to the sum available but there was a guarantee that there would be no further cost to the plaintiff than the deferred fees to fund the retirement benefits.
 III.
The defendant claims that any agreement made is barred by the Statute of Frauds, G.S. 52-550 in failing to meet the requirements that an "agreement, or memorandum of the agreement, is made in writing and signed by the party, or the agent of the party to be charged . . . (5) upon any agreement that is not to be performed within one year from the making thereof." Burkle v. Superflow Mfg. Co., 137 Conn. 488, 492-93.
However a memorandum of agreement is in writing, Plaintiff's Exhibit2, and Millman has signed an amendment acknowledging his input to the agreement between plaintiff and its directors. Plaintiff's Exhibit G. To comply with the Statute of Frauds, a written document need not consist of a single document, nor is it necessary that it should be drawn up in any particular form. Robert Lawrence Associates, Inc. v. Del Vecchio,178 Conn. 1, 20.
But here as well, the plaintiff replying on the promises of the defendant, has performed the agreement with the knowledge of the defendant to remove the agreement from the Statute's requirements. Ubyssv. DiPietro, 185 Conn. 47, 54; Burkle v. Superflow Mfg. Co., supra, 496.
 IV.
Finally the defendant claims that the Statutes of Limitations bar the action in that any oral contract is time-barred by G.S. 52-581 and any written contract would be time-barred by G.S. 52-57b if relating back to the proposal of 1984 or the second phase of 1988. The agreement identified in Section II and III supra is subject to the limitation of G.S. 52-57b. In a claim for breach of contract the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. Beckenstein v. Potter Carrier, Inc.,191 Conn. 150, 156. When Millman requested the plaintiff for payment of CT Page 14900 annual premiums by his letter dated January 25, 1993, Plaintiff's Exhibit12, because there was a reduction in the dividend scale, a breach of the contract occurred. Since this was the first notice to the plaintiff that it would be subject to a liability for costs greater than the deferred fees, any other point of time when the defendant would have the knowledge of such liability without disclosure would be tantamount to a fraudulent concealment of a cause of action. Kennedy v. Johns-Manville SalesCorporation, 135 Conn. 176, 179. In either alternative G.S. 52-576 would not bar the action brought in 1977.
For the above reasons the Court finds the issues as to the liability in favor of the plaintiff.
Corrigan, JTR