[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a dispute between the seller and the purchaser of a delicatessen located in Stamford. The plaintiff is Party Time Deli, Inc. and the defendant is Michael Neylan, the purchaser of the business. In connection with his purchase of the plaintiff's business for $110,000, the defendant executed a promissory note dated December 1, 1996, for $35,000, payable to the plaintiff in monthly installments over four years. The plaintiff alleges in its complaint that the note was in default.
The defendant filed an answer admitting that he signed a promissory note for $35,000 and that he failed to pay the installment due on March 1, 1999, but denied that he owed the plaintiff any money. Additionally, the defendant filed a special defense and counterclaim. The special defense alleges that in November of 1996, the parties had signed a purchase and sale agreement which included a provision that the plaintiff would not compete against the defendant in the retail delicatessen business in the city of Stamford for three years after the sale of the business on or about December 1, 1996, and that the plaintiff had violated this agreement.[1]
In his counterclaim, the defendant alleges again that his purchase agreement with the plaintiff provided that the plaintiff would not compete against him for three years. Moreover, the defendant alleges that the plaintiff signed a separate restrictive covenant on December 1, 1996, at the time of the closing, which also prohibited competition for three years and further provided that the plaintiff would be liable to the defendant for all costs and expenses including reasonable attorney's fees if the restrictive covenant needed to be enforced in court.[2] The defendant contends that the plaintiff violated both the November, 1996 agreement and the restrictive covenant by engaging in the delicatessen business in Stamford during the years 1998 and 1999.
Pursuant to General Statutes § 52-434 (a) and Practice Book § 19-2a, the case was referred to an attorney trial referee, Attorney Jules Lang. The attorney trial referee issued a report dated March 16, 2001, containing the following findings of fact: (1) the parties agreed that the balance due on the promissory note at the time of trial was $18,903.94; (2) the delicatessen business that the plaintiff sold to the CT Page 12258 defendant included operating the food concession at the Stamford Yacht Club during the summers; (3) the concession at the yacht club involved bringing prepared foods from the defendant's delicatessen to the club for sale to its members and guests; (4) both the agreement and the restrictive covenant explicitly provided that neither the plaintiff corporation nor its principal officer, Robert Goldkopf, could compete against the defendant for three years, and the plaintiff conceded that these provisions were reasonable; (5) in the summer of 1997, the defendant operated the concession at the Stamford Yacht Club with the assistance of Robert Goldkopf as his employee, and made a net profit of $25,000; (6) in the summer of 1998, the defendant decided that he no longer needed the assistance of Mr. Goldkopf as his employee in order to operate the concession; and (7) the Stamford Yacht Club thereupon severed its relationship with the defendant, but Mr. Goldkopf and his corporation, which included his son, Christopher, who was secretary of the corporation, took over the conduct of the concession business during that summer.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the concession at the Stamford Yacht Club was included within the scope of the word "delicatessen" in the two non-compete agreements; (2) the plaintiff had violated both the November, 1996 agreement and the separate restrictive covenant by operating the concession at the Stamford Yacht Club in the summer of 1998; (3) as provided in the promissory note, the defendant is entitled to a set-off on the note because the plaintiff violated the non-compete provisions; and (4) after subtracting $18,903.94, the balance on the note, from $25,000, the lost profit suffered by the defendant during the summer of 1998, the balance due the defendant from the plaintiff on his counterclaim is $6,096.06.
The plaintiff filed an objection to the attorney trial referee's report as authorized by Practice Book § 19-14.[3] The plaintiff claims that three of the' referee's factual findings and three of his conclusions "could not properly be reached on the basis of the subordinate facts found." Additionally, the plaintiff contends that the referee erred in evidentiary rulings concerning a certain absentee witness.
The first two factual findings challenged by the plaintiff state that after learning that the plaintiff corporation and Mr. Goldkopf would no longer be operating the concession on behalf of the defendant, the Stamford Yacht Club cancelled its agreement with the defendant, and that thereafter the plaintiff corporation, which included as principals both Mr. Goldkopf and his son, ran the concession in the summer of 1988 instead of the defendant. Moreover, the plaintiff challenges the CT Page 12259 referee's finding that the concession at the yacht club consisted of bringing delicatessen type food to the club and making it available to club members and their guests.
Furthermore, the plaintiff challenged all three conclusions drawn by the attorney trial referee, to wit, first, that the concession at the yacht club was covered by the covenant not to compete; second, that the actions of the plaintiff corporation and its officers, Mr. Goldkopf and his son, violated the restrictive covenant not to compete; and third, that the defendant was entitled to a set-off on the promissory note that he had signed.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another . . . attorney trial referee . . . for a new trial or revoke the reference and leave the case to be disposed of in court."
The case of Killion v. Davis, 257 Conn. 98, 102-103, ___ A.2d ___ (2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102.Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id. In this case, however, a transcript of the trial before the attorney trial referee was provided, and therefore, a preliminary task is to determine whether there is evidence in the record to substantiate the factual findings made by the referee. See JohnM. Glover Agency v. RDB Building, LLC, 60 Conn. App. 640, 646, 760 A.2d 980
(2000).
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. MansourBuilders, Inc., 20 Conn. App. 420, 423, 567 A.2d 1250, cert. denied,214 Conn. 804, 573 A.2d 318 (1989). Furthermore, "attorney trial referees CT Page 12260 and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Internal quotation marks omitted.) Id., 423-24.
The findings of fact in a contract action, such as this case, should be overturned "only when they are clearly erroneous." Wilcox Trucking, Inc. v. Mansour Builders, Inc., supra, 20 Conn. App. 425. A fact-finder's recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and "the reasonable inferences that may be drawn therefrom." Id.
Turning first to the issue of whether there is support in the record for the referee's three findings of fact that were challenged by the plaintiff. The objections involve whether the Stamford Yacht Club terminated the defendant because it learned that he was no longer employing the plaintiff corporation and its president, Mr. Goldkopf, to run the concession, and that the concession at the club consisted of bringing prepared food to the club for later consumption. A review of the transcript indicates that there is indeed support in the record for the referee's key finding that the yacht club concession "was among the "activities covered by the covenant not to complete."[4]
The challenge to the evidentiary rulings on pages 67 to 70 involves the attorney for the plaintiff stating that he wanted to call his partner, Attorney "McCabe, as a witness because he represented the plaintiff at the time the "business was sold to the defendant. The attorney trial referee remarked that he did not think it was appropriate for the plaintiff's lawyer to call his partner as a witness. However, the referee agreed that the plaintiff could make an offer of proof, which was that the "the testimony to be elicited would be relating to the negotiations that led up to the execution of the contract and communications between counsel who act as representatives of the parties as to what was included and what was not included in the sale, and what — and interpreting the particular terms."
Moreover, the proposed witness was not present in court at the time in question, and the plaintiff had already rested its case after introducing the promissory note. In addition, there was no claim that the restrictive covenant was not proper. In fact, counsel for the plaintiff stated in his closing remarks that: "We have not made any claim that the restrictive covenant itself is overly broad. I think it's a perfectly reasonable covenant. It's limited in time and scope
The issue in this case is whether the plaintiff's conduct in running the concession at the Stamford Yacht Club in the summer of 1998 violated CT Page 12261 the non-compete clause, which provided that the plaintiff and its principal officer "will not compete or engage directly or indirectly in a delicatessen business" in Stamford. In other words, did the concession at that time and place constitute delicatessen?
The parties could have explicitly stated that the covenant not to compete did or did not include the concession at the Stamford Yacht Club, but they did not do so. The attorney trial referee was, therefore, obliged to ascertain whether the concession was or was not included with the covenant and separate agreement. This in turn required an inquiry into the intent of the parties. Our Supreme Court in Tallmadge Brothers,Inc. v. Iroquois Gas Transmission System, L.P., 252 Conn. 479, 746 A.2d 127
(2000). held that in dealing with a contract, the initial inquiry is whether the wording of the contract is ambiguous or unambiguous. "Although ordinarily the question of contract interpretation, being a question of intent, is a question of fact . . . [where] there is definitive contract language, the determination of what the parties intended by the their contractual commitments is a question of law." (Internal citations omitted.) Id., 495.
In the present case, the attorney trial referee in effect determined that the contract language was ambiguous because the two agreements did not specifically state whether the yacht club concession was included. An inquiry into the intention of the parties "is a question of fact."Tallmadge Brothers, Inc. v. Iroquois Gas Transmission System, L.P.,
supra, 252 Conn. 495. The determination of the intent of the parties to an agreement involves in turn a determination of the credibility of the witnesses. "Great deference is given to the trial court's findings [regarding the facts of a case] because the trial court is responsible for weighing the evidence and determining the credibility of witnesses."Beizer v. Goepfert, 28 Conn. App. 693, 704-05, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973,113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
The court finds that the referee chose to believe the testimony offered by the defendant and not that of the plaintiff regarding their intent about the meaning of the word "delicatessen," and whether it included or excluded the concession at the Stamford Yacht Club. "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v. Goepfert, supra,28 Conn. App. 706. Therefore, this court is bound to accept the factual findings by the referee. Tarka v. Filipovic, 45 Conn. App. 46, 54,694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997). Moreover, "[w]hether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of fact."Presidential Capital Corp. v. Reale, 231 Conn. 500, 506-07, 652 A.2d 489
CT Page 12262 (1994).
The next issue is the referee's finding that the contract between the parties was actually breached. It is well recognized that whether a contract has been breached is an issue of fact for the trier of fact.Bowman v. 1477 Central Avenue Apartments, Inc., 203 Conn. 246, 257,524 A.2d 610 (1987). In this case, the trier of fact in determined that the parties understood that the delicatessen concession at the yacht club was included within the scope of the non-compete agreements. Again, this finding cannot be deemed to be "clearly erroneous." Wilcox Trucking,Inc. v. Mansour Builders, Inc., supra, 20 Conn. App. 425.
Based upon a review of the report, the court finds that the attorney trial referee's conclusions and recommendations are supported by the subordinate facts that he found. The conclusion that the defendant is owed the sum of $6,096.06 on his counterclaim follows logically and legally from the finding by the attorney trial referee that the plaintiff engaged in a competing delicatessen business in 1998, in breach of the November, 1996, contract and the restrictive covenant agreement.
Accordingly, judgment enters in favor of the defendant to recover from the plaintiff $6,096.06 as damages. Costs are to be taxed in favor of the defendant by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book § 18-5.
The defendant has made a claim for attorney's fees which, as noted previously, are authorized by the restrictive covenant agreement. Thus, the case is remanded to the attorney trial referee for the limited purpose of recommending a reasonable attorney's fee to be awarded to the defendant. This hearing should be arranged as soon as possible through the Caseflow Office.
So Ordered.
Dated at Stamford, Connecticut, this 20th day of August, 2001.
William B. Lewis, Judge T. R.