ELEANOR SIVILLA ET AL. *v.* PHILIPS MEDICAL SYSTEMS OF NORTH AMERICA, INC., ET AL.
(AC 15291)

Lavery, Landau and Healey, Js.

Argued May 30—officially released September 16, 1997

*Lois Tanzer*, with whom, on the brief, was *Tanya Feliciano*, for the appellant (intervening plaintiff).

*James E. O'Donnell*, with whom was *David J. McDonald*, for the appellees (defendants).

*Opinion*

LANDAU, J. The intervening plaintiff, Saint Mary's Hospital (St. Mary's), appeals from the judgment, rendered after a jury trial, of indemnification in favor of the defendants, Philips Medical Systems of North America, Inc., and North American Philips Corporation (Philips) on their counterclaim. On appeal, St. Mary's argues that the trial court improperly (1) rendered judgment in the absence of subject matter jurisdiction, (2) admitted evidence of the underlying judgment, (3) found that an enforceable indemnity agreement existed between St. Mary's and Philips, and (4) found that the action was not time barred. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In August, 1988, the plaintiff Eleanor Sivilla, an employee of St. Mary's, sustained work-related injuries when an X ray machine fell on her. St. Mary's had purchased the X ray machine from Philips in October, 1980. In August, 1990, Sivilla commenced a products liability action against Philips. Sivilla's husband, Mathew Sivilla, joined

in the action seeking damages for loss of consortium.[1] In January, 1992, St. Mary's intervened by way of an amended complaint in Sivilla's product liability action seeking reimbursement from Philips for workers' compensation benefits paid to Sivilla. Philips filed an answer, special defenses and a counterclaim. The counterclaim alleged an independent legal relationship between Philips and St. Mary's based on a purchase and sale contract that provided that St. Mary's would indemnify and hold Philips harmless from all claims and judgments arising out of or in connection with the operation of the product by St. Mary's.

In June, 1993, Philips moved for summary judgment on St. Mary's intervening complaint on the ground that the products liability statutes barred employers from intervening or asserting a lien if the claim against the third party is a products liability claim. The trial court granted Philips' motion for summary judgment on the ground that General Statutes (Rev. to 1993) § 52-572r (c) precluded the cause of action by St. Mary's against Philips.[2] In February, 1995, following a mediation conference, Sivilla and Philips filed a stipulated judgment for Sivilla to recover $750,000 in the underlying action.

Philips proceeded to trial against St. Mary's on the indemnification counterclaim. On May 3, 1995, the jury returned a verdict in the amount of $750,000 on behalf of Philips. St. Mary's moved postverdict to set aside the verdict, for judgment notwithstanding the verdict and for a set off of the amounts paid under the Workers' Compensation Act. The trial court, in a thorough memorandum of decision, denied the motion by St. Mary's to

---

[1] Mathew Sivilla subsequently withdrew his claim and is not a party in this appeal.

[2] General Statutes (Rev. to 1993) § 52-572r (c), repealed by Public Acts 1993, No. 93-228, § 34, provides in pertinent part: "[A]n employer . . . shall [not] have any lien upon any judgment received in any product liability claim, or any right of subrogation if the claim against the third party is a product liability claim."

set aside the verdict and for judgment notwithstanding the verdict. This appeal followed.

## I

St. Mary's first claims that the trial court improperly rendered judgment in the absence of subject matter jurisdiction. St. Mary's argues that Philips' action for indemnification is barred by the Product Liability Act[3] and the "exclusive remedy" provisions of the Workers' Compensation Act.[4] We disagree.

We first address the issue of subject matter jurisdiction of this court. "Lack of subject matter jurisdiction may be raised at any time. . . . Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Citations omitted; internal quotation marks omitted.) *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 330, 695 A.2d 1072 (1997). It is well settled that statutes are to be read as favoring subject matter jurisdiction, absent a clear indication of legislative intent to limit it. *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 684, 694 A.2d 1218 (1997).

General Statutes (Rev. to 1993) § 52-572r (d) of the Product Liability Act provides: "In any product liability claim for personal injury or death arising out of and in the course of employment subject to the provisions of sections 52-240a, 52-240b, 52-572m to 52-572r, inclusive, and 52-577a, brought against any third party, such third party may not maintain any action for indemnity against any person immune from liability." No language exists in this statute which implicates the trial court's subject matter jurisdiction over this action, as claimed by St.

---

[3] General Statutes § 52-572m et seq.
[4] General Statutes § 31-284 (a).

Mary's. Therefore, we conclude that the trial court had subject matter jurisdiction over this case.

Philips further argues that, because the trial court had subject matter jurisdiction and St. Mary's failed to plead immunity as a special defense or otherwise to raise the defense at trial, the issue of whether St. Mary's was entitled to immunity under the Workers' Compensation Act was not properly preserved and, therefore, is not reviewable by this court. We agree.

Our Supreme Court has determined that immunity must be raised as a special defense in the pleadings. See *Gauvin* v. *New Haven*, 187 Conn. 180, 184–85, 445 A.2d 1 (1982). " 'The purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway.' " *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 24, 664 A.2d 719 (1995). If St. Mary's was immune from liability, as it claimed under the exclusive remedy provision of the Workers' Compensation Act, it was incumbent upon St. Mary's to plead that fact as a special defense. St. Mary's did not do so.[5]

It is true that "[i]n certain limited circumstances, an appellate court will address the issue of whether . . . immunity is available to a defendant where the defense was not specially pleaded. If the question of . . .

---

[5] The argument by St. Mary's seems to suggest that the trial court should have taken judicial notice of the fact that it was entitled to immunity. "The true conception of what is judicially known is that of something which is not, or rather need not be, the subject of either evidence or argument, unless the tribunal wishes it,—something which is already in the court's possession, or, at any rate, is so accessible that there is no occasion to use any means to make the court aware of it." 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) pp. 112–13. The issue of whether St. Mary's is entitled to immunity under the exclusive remedy provision of the Workers' Compensation Act is not a matter of which the trial court could appropriately take judicial notice. See *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 246, 520 A.2d 1008 (1987).

immunity was fully litigated at trial, without objection from the plaintiff, the plaintiff is deemed to have waived its objection to the requirement that the defense be specially pleaded." Id., 24–25. In this case, however, St. Mary's did not raise the issue of immunity at trial, and, therefore, Philips cannot be deemed to have waived its objection. In fact, the first time that St. Mary's claimed immunity, pursuant to § 52-572r (d), was in its postverdict motions to set aside the verdict and for judgment notwithstanding the verdict. Accordingly, we decline to review this claim. See id., 27.[6]

## II

St. Mary's next argues that the trial court improperly admitted evidence of the underlying judgment. St. Mary's concedes that the jury properly considered the fact that a stipulated judgment, including the amount of the judgment, was accepted by the court. St. Mary's argues, however, that the mediation settlement opinion and the testimony of Sivilla and her attorney regarding the settlement were improperly admitted and considered by the jury.

St. Mary's argues that it was prejudiced by the reading of the mediation settlement recommendation to the jury, which included unfavorable statements concerning St. Mary's in that it was asked to participate in

---

[6] St. Mary's also moved for a setoff of the workers' compensation it had paid to Sivilla. St. Mary's claimed that it had paid Sivilla $183,011.70 indemnity and $74,098.48 in medical expenses and that the $750,000 verdict should be reduced accordingly. St. Mary's improperly relies on General Statutes (Rev. to 1993) § 52-572r (b), which provides in pertinent part that "[t]he plaintiff upon verdict or settlement against a third party resulting from a product liability claim shall receive the amount of the verdict or settlement reduced by . . . [any] amount paid as compensation, including medical expenses, under the provisions of chapter 568 [Workers' Compensation Act]. . . ." That statute provides for the third party, Philips in this case, to obtain a setoff for any amounts paid to the plaintiff under the Workers' Compensation Act. It does not provide for a setoff in favor of the employer. Therefore, the trial court properly denied the motion for a setoff filed by St. Mary's.

the mediation but declined. The trial court did give a curative instruction.[7] St. Mary's further argues that Sivilla's attorney was an improper witness because he was not a fact witness to the accident and that his testimony was irrelevant and prejudicial.[8]

Philips argues that the judgment and the attached settlement negotiation were properly admitted, and, if part of the recommendation was prejudicial, that St. Mary's was obligated to make a specific objection before the trial court to have that prejudicial portion redacted. Philips also argues that the settlement recommendation was relevant and probative on the issue of the reasonableness of the settlement. Finally, Philips argues that any prejudicial impact was avoided by the trial court's jury instruction.

It is well established that a "trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted;

---

[7] The trial court instructed the jury in part as follows: "Now, ladies and gentlemen, I've admitted into evidence a document that's entitled motion for a stipulated judgment, the judge's order on it and the recommended settlement opinion that was attached to it.

"As part of this recommended settlement opinion, the mediator indicated that although invited to participate, St. Mary's Hospital chose not to do so, and my instruction to you now is that should not in any way be held against St. Mary's in this particular case. They had every right not to participate in the mediation session, and they had rights, including a constitutional right, to appear before the court and to have a judge and a jury hear these issues."

[8] St. Mary's argues, on the basis of the public policy of promoting settlement of disputes, that evidence of the settlement negotiations is not admissible at trial. "The general rule that evidence of settlement negotiations is not admissible at trial is based upon the public policy of promoting the settlement of disputes." (Internal quotation marks omitted.) *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 221 Conn. 194, 198, 602 A.2d 1011 (1992). The trial court, however, did not admit evidence of the settlement negotiations, but rather admitted evidence only of the stipulated judgment. That evidence was relevant to the reasonableness of the indemnity agreement and, therefore, was properly considered by the jury.

internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 752, 680 A.2d 301 (1996). In its memorandum of decision on St. Mary's motion to set aside the verdict and for judgment notwithstanding the verdict, the trial court rejected that argument.[9] Where an action for indemnity is brought based on a stipulated judgment, the reasonableness of the settlement is an element that must be proven. *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 160, 681 A.2d 293 (1996). In its jury charge, the trial court instructed the jury that, in evaluating the issue of the reasonableness of the settlement, it could consider the mediation recommendation as one factor, but that it was not bound by the recommendation.[10] Even if we assume that St. Mary's properly objected to the admission of the recommendation, its claim that it was prejudiced by the admission into evidence of the statement in the recommendation that it was asked to participate but declined fails because the trial court instructed the jury on that issue as well. As a result of our review of the record, we conclude that the trial court did not abuse its discretion by admitting the mediation settlement recommendation.

## III

St. Mary's next argues that the trial court improperly found that Philips had established that an enforceable

[9] The trial court stated in part: "The court admitted no evidence of settlement negotiations between Philips and St. Mary's. The court did admit evidence of the stipulated judgment between Mrs. Sivilla and Philips. The evidence of the stipulated judgment which the court . . . adopted was relevant to the indemnity agreement which was before the jury. The indemnity agreement set forth an obligation on the purchaser to indemnify for claims, demands and judgments. Since the reasonableness of Philips' payment to Mrs. Sivilla was at issue, it was further evidence of what the nature of her claims or demand was."

[10] The trial court further instructed the jury in part: "It's your job to determine whether $750,000 represents fair and just compensation. You may find a lesser sum represents fair and just compensation for her injuries and that a lesser sum was reasonable, and if you find that such a sum was a

indemnity agreement existed between St. Mary's and Philips. St. Mary's argues that the evidence proffered by Philips was insufficient to establish such an indemnity agreement.[11] We disagree.

"To be enforceable, an agreement must be definite and certain as to its terms and requirements. . . . Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of facts." (Citation omitted; internal quotation marks omitted.) *Presidential Capital Corp.* v. *Reale,* 231 Conn. 500, 506–507, 652 A.2d 489 (1994). "Appellate review of findings of fact is limited to deciding whether such findings were clearly erroneous. . . . *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.,* 238 Conn. 216, 232, 680 A.2d 127 (1996). A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached."

lesser amount, then that is the amount you would award as damages in this case."

[11] In its memorandum of decision, the trial court summarized the specific arguments by St. Mary's as follows: (1) the alleged contract, if it existed, does not contain an authorized purchaser's signature; (2) at no time did Philips offer evidence that the parties had contracted on similar matters in the past or developed a continuing course of conduct to interpret the terms of the alleged agreement which was ambiguous and incomplete; (3) the alleged contract, if it existed, was ambiguous and the only document offered by Philips that was signed by a representative of St. Mary's was a purchase order that did not acknowledge acceptance of the terms of the alleged agreement offered by Philips; (4) there was no evidence to support a claim that the terms and conditions allegedly on the back of the quotation offered by Philips was ever received, reviewed or accepted by an authorized representative of St. Mary's; and (5) the documentary evidence that allegedly evidenced a meeting of the minds for a contract or acceptance of the proposed agreement by St. Mary's was not offered into evidence and did not exist.

(Citations omitted; internal quotation marks omitted.) *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 363–64, 685 A.2d 319 (1996).

There was substantial evidence regarding the transaction between the parties. Evidence was offered that an original proposal was made to St. Mary's on a standard Philips proposal form, the back of which contained conditions of sale, including the indemnity provision. St. Mary's forwarded a purchase order in response thereto, the terms of which were consistent with Philips' proposal form. Subsequently Philips, after receiving St. Mary's responsive purchase order, again confirmed the terms and conditions of the sale, and, thereafter, St. Mary's accepted the equipment. " 'A manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined.' 1 Restatement (Second), Contracts § 22 (2) (1981); *Rahmati* v. *Mehri*, [188 Conn. 583, 587 and n.4, 452 A.2d 638 (1982)]." *Presidential Capital Corp.* v. *Reale*, supra, 231 Conn. 507. Based on the foregoing, we conclude that the evidence was sufficient to permit a jury reasonably to find that a contract existed between St. Mary's and Philips.[12]

---

[12] St. Mary's also argues that the trial court improperly charged the jury regarding the testimony Philips elicited from Stanley Bernier, the current director of material management at St. Mary's, that St. Mary's had destroyed all the documents in its possession relating to the purchase of the X ray machine. St. Mary's argues that a negative inference was created by its failure to produce the documents and, thus, they were entitled to a curative jury instruction.

The trial court rejected this argument in its memorandum of decision, stating "[s]ince no other copy existed of both front and back of that original [the Philips proposal form] proof of what it contained could only be offered through secondary evidence as to what the form used had always contained. That was the purpose of mentioning that fact." We note that "[t]he extent to which a court should comment on the evidence is largely a matter within its sound discretion." *State* v. *Villafane*, 45 Conn. App. 110, 114, 694 A.2d 802 (1997), citing *Worden* v. *Francis*, 153 Conn. 578, 580, 219 A.2d 442 (1966).

This does not, however, conclude our analysis on this issue. St. Mary's argues in the alternative that, even if a contract did exist, the indemnity provision was ambiguous. The indemnity agreement provides in pertinent part that the "Buyer agrees to indemnify and hold Seller harmless from and against all claims, damages, actions, causes of actions, judgments and costs, including reasonable attorney's fees, arising out of or in connection with the operation of the products by the Buyer, unless caused by the Seller's negligence." The jury in rendering its verdict in favor of Philips and the trial court in denying St. Mary's postverdict motions found that the indemnity provision was not ambiguous. The language of the indemnity provision required St. Mary's to indemnify Philips for all judgments. We conclude that the language of the express indemnification provision was clear and unambiguous.

## IV

St. Mary's finally argues that Philips' counterclaim was time barred by General Statutes § 52-577a (a) and (b).[13] St. Mary's argues that Philips' counterclaim is untimely because it was not brought within one year from the date the cause of action was returned to court pursuant to § 52-577a (b). Philips contends, however, that § 52-577a applies only to product liability claims,

---

We cannot say that the trial court abused its discretion by commenting as it did.

[13] General Statutes § 52-577a provides in pertinent part: "(a) No product liability claim . . . shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered . . . [and] no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product.

"(b) In any such action a product seller may implead any third party who is or may be liable for all or part of the claimant's claim, if such third party defendant is served with the third party complaint within one year from the date the cause of action brought under subsection (a) of this section is returned to court. . . ."

and, since its claim is a contractual claim for indemnification, § 52-577a does not apply and General Statutes § 52-598a, which provides the time limitation for actions for indemnification, controls. Moreover, Philips contends that its claim was brought as a counterclaim and, thus, could be brought at any time before the pleadings were closed.

Section 52-598a sets forth the statute of limitations for actions for indemnification and provides "an action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement." Section 52-598a expressly provides that a cause of action for indemnity does not arise until the determination of the underlying action against the party seeking indemnification. Thus, where an indemnity is against loss, as it is here, the loss must actually occur and be ascertainable before the indemnitee can maintain an action. *Fairfield* v. *D'Addario*, 149 Conn. 358, 361, 179 A.2d 826 (1962). Philips' cause of action, notwithstanding the date on which its contingent claim for indemnification was filed, did not accrue until February 8, 1995, when the stipulated judgment was accepted by the trial court. We note that the "[s]ubstantive rights of the parties are fixed at the date upon which the cause of action accrues"; *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 520–21, 562 A.2d 1100 (1989); i.e., when a party suffers actionable harm. Because Philips' cause of action arose on February 8, 1995, the three year statute of limitations provided for in § 52-598a controls. Therefore, Philips' cause of action was timely filed.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] As a result, we do not address Philips' argument that, because the claim was brought in a counterclaim, it could be brought at any time before the pleadings were closed.