[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION RE: STAY OF EXECUTION
This is the second summary process action between the parties. The first action was brought in April 1999, after Notice to Quit had been served on the defendant (hereinafter sometimes "Barksdale") for non payment of rent. That action was dismissed by the court after trial because subsequent acts of the plaintiff (hereinafter sometimes "Eagle") negated the effect of the notice to quit as an unequivocal act terminating the lease. EagleCranberry v. Barksdale, HDSP-102819, June 3, 1999.
The plaintiff then instituted this second action with a return date of July 22, 1999, to recover possession of the premises. Although the notice to quit states both non payment of rent and lapse of time as grounds, the complaint alleges only that "[t]he lease has terminated by lapse of time." On September 13, 1999, after trial, judgment for possession was rendered in favor of the plaintiff based on lapse of time.
Thereafter, the defendant applied for a stay of execution. Pursuant to General Statutes §§ 47a-37 and 47a-39, a defendant against whom a judgment has been rendered specified statutory grounds including lapse of time may within five days file an application requesting a stay of execution. General Statutes §47a-37. Upon hearing the application for stay of execution, the judgment of the trial court shall stand, but if the premises are used for dwelling purposes, the application is not excluded by statute, and the circumstances to be considered so warrant, the court may grant a stay of execution not exceeding six months from the date of judgment upon such conditions and terms as appear fair and equitable. General Statutes § 47a-39. In the case of an applicant who is a conversion tenant or who at the time of conversion was residing in a dwelling unit in a building or on property which has been declared a conversion condominium, at the end of such six-month period the court may extend the stay of execution under the same or different conditions and terms for an additional period not exceeding nine months taking into CT Page 878 consideration the age of the applicant, the size of the applicant's family, the length of time of such applicant's tenancy and the availability of suitable alternative housing. Such extended stay may be reviewed every two months. Id.
Prior hearings on Barksdale's application for stay were held on September 28, 1999, and November 1, 1999. The stay periods following those hearings have been conditioned on payment of arrearage and use and occupancy by her to the plaintiff and on reports to the court concerning her efforts at obtaining other suitable housing.
The parties appeared again before the court on December 12, 1999, on the application for stay of execution. At that hearing, Barksdale requested that she be given the maximum stay allowable which she understood to be six months or until March 2000. Barksdale who has been living at the premises for eighteen years is attempting to obtain a mortgage to purchase her dwelling. The plaintiff requested that any further stay be short and final.
The plaintiff has acknowledged that the dwelling occupied by the defendant is in a residential condominium conversion complex. The court takes judicial notice of Docket No. HDSP-102819, the first summary process action, specifically Defendant's Exhibit E. Exhibit E is a letter to the defendant from the plaintiff dated February 1, 1999, giving notice that "Eagle intends to convert the residential complex to (a condominium) on or after May 1, 1999." The letter refers to Bairnsdale as a "conversion tenant."
Barksdale is an applicant for stay of execution who is a conversion tenant, or who at the time of conversion was residing in a dwelling unit in a building or on property which has been declared a conversion condominium. Thus, she enjoys protection under the statutes governing condominium conversions, General Statutes 47-282 et seq. The notice letter to Barksdale dated February 1, 1999, also identifies her rights as a conversion tenant during the statutory transition period, which is "the period of time beginning on the date when that tenant's dwelling unit or space becomes a converted unit, and ending nine monthsafter that tenant receives a conversion notice or when hisexisting lease ends, whichever is later. General Statutes §47-283. Those rights include the right to protection from eviction during the transition period.
General Statutes § 47-290 states, CT Page 879
 (a) During a transition period, a conversion tenant may be evicted from a converted unit only for a reason which would justify eviction under subsection (b) of section 47a-23c.[1] (b) After a transition period ends, a conversion tenant may be evicted for any reason permitted by law, including expiration of the tenant's lease, unless protected by section 47a-23c.
The conversion notice to Barksdale is dated February 1, 1999. At the earliest, the nine-month transition period ended October 31, 1999. While the first eviction action for non payment could properly be brought during the transition period, this eviction action instituted in July 1999, for lapse of time, could not. The court has considered the effect of the premature institution of this action on its jurisdiction to hear this case.
Lack of subject matter jurisdiction must be considered by the court and acted on, no matter at what stage of the proceedings the issue is raised. It can be raised at any point in the proceedings, even on appeal, and by the court. Kolenberg v. Boardof Education, 206 Conn. 113, 124 (1988). The determination of whether the court has jurisdiction over the subject matter must be informed by the established principle that every presumption is to be indulged in favor of jurisdiction. Demar v. Open Space Conservation Commission, 211 Conn. 416, 425, 559 A.2d 1103
(1989)." LeConche v. Elligers, 215 Conn. 701, 709-10 (1990).
 Lack of subject matter jurisdiction may be raised at any time. . . . Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction. . . ." (Citations omitted; internal quotation marks omitted.) Second Injury Fund v. Lepechima, 45 Conn. App. 324, 330, ___ A.2d ___ (1997). It is well settled that statutes are to be read as favoring subject matter jurisdiction, absent a clear indication of legislative intent to limit it. Doe v. Statewide Grievance Committee, 240 Conn. 671 . . . (1997).
Sivilla v. Philips Medical Systems of N.A., Inc.,46 Conn. App. 699, 703 (1997).
The statutory language "[d]uring a transition period, a conversion tenant may be evicted from a converted unit only for a CT Page 880 reason which would justify eviction under subsection (b) of section 47a-23c" does not indicate an intent to limit this court's jurisdiction. Moreover, no cases have been found which implicate subject matter jurisdiction where the protection afforded against evictions pursuant to General Statutes § 47-290
or 47a-23c is at issue. See First Federal Bank v. Whitney Devel.Corp., 237 Conn. 679 (1996) (protectlon from dispossession under General Statutes § 47a-23c is a defense to ejectment in foreclosure action). "It is important to distinguish between a lack of subject matter jurisdiction and a possible defense. . . ." State v. Booker, 28 Conn. App. 34, 39-40 (1992) cert. den. 223 Conn. 919 (1992).
While the initiation of this action to evict Barksdale during the condominium conversion transition period may have afforded her a good defense, it does not rise to the level of a defect which deprives this court of subject matter jurisdiction and the power to hear the case. Thus, this court continues to exercise jurisdiction in this matter during the stay period pursuant to General Statutes § 47a-39.
Given Barksdale's eighteen year residence in her dwelling unit and her protected status as a conversion tenant, the court finds that she is precisely the kind of tenant which the legislature intended to protect from dislocation and from the vagaries of the housing market with an extended stay period. Accordingly, the stay of execution is continued until March 10, 2000, on the condition that the defendant continue to pay use and occupancy in the amount of $800.00 on or before the tenth day of each month during the stay period and continue diligent and good faith efforts to find alternative housing.
This is a non-final stay. The parties are to appear before the court for further review of the stay on March 6, 2000.
Tanzer, J.