NELSON GRANGER ET AL. *v.* A. AIUDI AND
SONS ET AL.
(AC 19192)

Schaller, Hennessy and Zarella, Js.

---

Argued March 30—officially released September 19, 2000

*John R. Fornaciari*, with whom were *James H. Throwe* and *Gregory P. Granger*, for the appellants (plaintiffs).

*Peter J. Zagorsky*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiffs[1] appeal from the judgment of the trial court rendered following a trial to the court determining that the concrete business of the substitute defendant, A. Aiudi & Sons, LLC,[2] does not constitute a nuisance and that the plaintiffs are not, therefore, entitled to an injunction. On appeal, the plaintiffs claim that the court improperly (1) concluded that the defendant's operation is not a nuisance, (2) failed to issue an injunction in their favor on the basis of the defendant's zoning violations and (3) burdened their constitutional rights of free association and access to the courts and their rights to petition the government for the redress of grievances. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The defendant operates a concrete business on Camp Street in Plainville. The defendant owns a seventeen acre parcel of land zoned as quarry industrial (quarry parcel) and a twenty-six acre parcel west of and adjacent to the seventeen acre parcel, which is zoned as residential R-11 (residential parcel).

The defendant has used the quarry parcel as a sand and gravel operation since the 1920s. Over time, the defendant installed a rock crushing, sand washing and

---

[1] The plaintiffs are Nelson Granger, Jeannette Granger, Robert Mastrianni, Patty Mastrianni, Dennis Heckman, Christine Heckman and Gladys Pietrowicz. The plaintiffs all either own or reside on property located in the vicinity of the concrete business operated by the defendant A. Aiudi & Sons, LLC.

[2] The original defendants were A. Aiudi & Sons, a dissolved partnership; Elmo R. Aiudi, a principal partner in A. Aiudi & Sons; and the estate of Joseph Aiudi, the legal entity holding the assets of Joseph Aiudi, a deceased partner in A. Aiudi & Sons, the administrators of which are Nicholas Champ and Theresa A. Aiudi. At trial, the parties stipulated to the substitution of A. Aiudi & Sons, LLC, as the successor in interest to defendants A. Aiudi & Sons and the estate of Joseph Aiudi. We refer in this opinion to A. Aiudi & Sons, LLC, as the defendant.

concrete plant. The defendant currently uses the quarry parcel to crush stone into aggregate, to process and wash sand, gravel and crushed stone, and to manufacture concrete, all of which is permissible in a quarry industrial zone. The defendant uses the residential parcel to store unprocessed sand and gravel, which it eventually retrieves for the manufacture of concrete on the quarry parcel. In so doing, the defendant regularly traverses the property line between the two parcels.

The defendant stores approximately twelve dump trucks on the quarry parcel. It also has approximately twenty-one concrete mixers garaged and serviced on the quarry parcel. There is a service garage and an office building on the parcel as well.

The defendant's hours of operation vary depending on demand, and the business has no definite starting time. On any given day, the operation can commence as early as 5 a.m. and conclude as late as 8 p.m. The defendant does not operate on Sundays. The rock crusher typically starts running at about 7:30 a.m. and stops at about 4:30 p.m. The dump trucks run on approximately the same schedule as the rock crusher, while the schedule of the concrete mixers may be longer, depending on demand.

The plaintiffs brought the underlying action by way of an amended complaint alleging that the defendant's operation constitutes an unreasonable use of its property, and that the noise and air pollution as well as the water and traffic diversion interfere with the plaintiffs' peaceful use and enjoyment of their properties. The amended complaint also alleged that the use of the roadway system in the vicinity of the defendant's operation is above capacity and is recognized as among the worst in Plainville, and that all of the conditions stemming from the operation have diminished, and will continue to diminish, the value of the plaintiffs' properties.

Finally, the amended complaint alleged that the defendant's operation is in violation of Plainville zoning ordinance § 400, which prohibits the defendant's industrial use of its quarry parcel within fifty feet of any parcel that is zoned as residential, and that such violation caused the plaintiffs special damages. The plaintiffs sought relief in the way of a permanent injunction prohibiting the defendant from operating until it ceases its operations in the fifty foot buffer zone, a permanent injunction prohibiting the defendant from operating at "unreasonable and obnoxious hours," and compensation for the alleged diminution in value of the plaintiffs' properties.

Following a trial to the court, the court rendered judgment in favor of the defendants. In its memorandum of decision, the court concluded that neither the noise nor the dust or dirt emissions caused by the defendant's operation create a nuisance as to the plaintiffs and that the plaintiffs had failed, therefore, to show that they had suffered irreparable harm. As to the zoning violations, the court assumed, without deciding, that the alleged activities of the defendant were in violation of the zoning regulations, but specifically found that the plaintiffs had not suffered any special damages and dismissed the claim. This appeal followed. Additional facts will be set forth where necessary.

I

The plaintiffs claim first that the court improperly failed to find that the defendant's alleged creation of pollution and noise constitutes a nuisance. We do not agree.

To establish a nuisance, four elements must be proven: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlaw-

ful; and (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. *Kostyal* v. *Cass*, 163 Conn. 92, 99–100, 302 A.2d 121 (1972). Whether any of those essentials exist ordinarily is a question of fact. *Chazen* v. *New Britain*, 148 Conn. 349, 355, 170 A.2d 891 (1961).

"Appellate review of findings of fact is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." (Citation omitted; internal quotation marks omitted.) *Sivilla* v. *Philips Medical Systems of North America, Inc.*, 46 Conn. App. 699, 708, 700 A.2d 1179 (1997).

## A

The plaintiffs argue first that the court's finding that the alleged air pollution from the defendant's operation did not constitute a nuisance was clearly erroneous. We are not persuaded.

The plaintiffs sought to sustain their burden of proof with, inter alia, their own testimony. The court noted that all of the plaintiffs complained of dirt or dust on the exterior of their homes and on their properties, and that some complained of dust on the interior of their homes. Some claimed and some denied ever seeing the matter coming from the defendant's plant, and some admitted that off-road vehicles create dust on a nearby sandlot on weekends.

The plaintiffs also produced the testimony of an expert, Mitchell Wurmbrand, a meteorologist. On the

basis of an air quality dispersion model that he prepared for purposes of evaluating compliance with air quality standards, and without having visited the plant, Wurmbrand concluded that the defendant's operation violates industry standards as to particulates.[3] The court discounted the modeling as an estimate and not an actual measurement of particulates.

The defendant produced three experts in support of its position, Michael Schum and John Yocom, licensed professional engineers, and Norman Bowne, a meteorologist. Yocom and Schum collaborated on sample testing of particulates at the plant. They testified that on the basis of the data gathered in the sampling, the defendant's operation did not violate the industry standard for excessive particulates. All three experts testified that in their opinions, the plant does not unreasonably interfere with the plaintiffs' use of their properties. Yocom testified that he had no reason to believe that the plant presents a health hazard to any of the plaintiffs and that his firsthand observation of the plant revealed that the actual physical presence of dust is inconsistent with Wurmbrand's testimony on that point.

In its memorandum of decision, the court stated that it did not find the analysis or the conclusions of Wurmbrand to be credible, but that it found the testimony of the defendant's experts credible. Our Supreme Court has stated that "[i]t is in the sole province of the trier of fact to evaluate expert testimony, to assess its credibility, and to assign it a proper weight." *State* v. *Jarzbek*, 204 Conn. 683, 706, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). "[T]he acceptance or rejection of an opinion of a qualified expert is a matter for the trier of fact unless the

---

[3] "Particulates" is the term used by industry experts to refer to dust and dirt emissions.

opinion is so unreasonable as to be unacceptable to a rational mind." *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 586, 153 A.2d 420 (1959). Where, as here, there is strongly conflicting testimony from the expert witnesses, the trier of fact must determine the credibility of that testimony and may believe all, some or none of the testimony of a particular witness. See *Briggs* v. *State Employees Retirement Commission,* 210 Conn. 214, 217, 554 A.2d 292 (1989); *Toffolon* v. *Avon,* 173 Conn. 525, 530, 378 A.2d 580 (1977).

The court in this case was faced with the conflicting testimony of the experts and found the defendant's experts to be more credible. On the basis of that testimony, the court concluded that the defendant's operation did not produce particulates to the point of creating a nuisance as to the plaintiffs. Furthermore, our review of the evidence does not leave us with a definite and firm conviction that the court committed a mistake. Accordingly, the court's finding of fact that the alleged air pollution by the defendant did not cause a nuisance as to the plaintiffs was not clearly erroneous.

B

The plaintiffs also argue that the court's finding that the noise from the defendant's operation did not constitute a nuisance was clearly erroneous. We disagree.

The plaintiffs presented the testimony of Allan Smardin, who was not a licensed professional engineer, but who has an electrical engineering degree and an acoustics firm, and for thirty-five years has performed noise measurements. The defendant presented the testimony of Bennett Brooks, a licensed professional engineer. As was the case with the testimony on particulates, the testimony and ultimate opinions of Smardin and Brooks conflicted in most respects. The court found Brooks' testimony to be more credible. On the basis of that testimony, its observation of the site and other compe-

tent evidence, the court found that the noise created by the operation of the defendant's plant and trucks did not exceed industry standards, and did not therefore constitute a nuisance. The court's finding had ample basis in the record and as such was not clearly erroneous.

"Our Supreme Court recently set forth the governing principles for our standard of review as it pertains to a trial court's discretion to grant or deny a request for an injunction: A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand. . . . *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995)." (Internal quotation marks omitted.) *Raph* v. *Vogeler*, 45 Conn. App. 56, 62–63, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997). In light of our conclusion that the court's findings that the particulates and noise did not constitute a nuisance were not clearly erroneous, the court's decision to deny the plaintiffs' request for an injunction on those grounds was not an abuse of its discretion.

## II

The plaintiffs claim next that the court's failure to grant them an injunction on the basis of the defendant's alleged zoning violations was improper as a matter of law. We disagree.

The court assumed, without deciding, that the defendant violated § 400 of the Plainville zoning regulations, but denied the plaintiffs' request for an injunction on

that basis because the plaintiffs failed to prove special damages from the alleged violation. The court noted that " '[t]hough the primary responsibility for enforcing zoning regulations rests with the zoning commission, where a violation results in special damage to an individual, the injured party has a right to seek injunctive relief [from the court].' " This is a proper statement of the law. See, e.g., *Schomer* v. *Shilepsky*, 169 Conn. 186, 194, 363 A.2d 128 (1975). Therefore, for the plaintiffs to succeed in their quest for injunctive relief, they needed to prove that they incurred special damages as a result of activities in the buffer zone. The court specifically found that there was "no economic or other special damage to [the] plaintiffs from those activities." Contrary to the claim of the plaintiffs, the court did not apply incorrect principles of law.

The plaintiffs also argue that even if the court was correct in its application of the law, its finding of fact was clearly erroneous. We disagree. The court found that only one of the plaintiffs, Gladys Pietrowicz, lived in the vicinity of the buffer zone and that the presence of a concrete wall therein was not causing damage to her. This was based on the court's view of the properties as well as the testimony of the plaintiffs' expert. The court also found that the plaintiffs had failed to prove any specific economic damages from the activities within the buffer zone. The court considered the testimony of Peter Marsele, an appraiser and expert for the plaintiffs, who testified as to the value of the homes of three of the plaintiffs. The court found that Marsele's testimony did not attempt to quantify any diminution of the homes' value from the buffer zone activities, and that he did not consider any impact from those activities separate from the impact of the defendant's entire operation. Because the court found that the plaintiffs could not show that the activity in the buffer zone caused them to suffer special damages, they could not bypass

local zoning authorities by seeking injunctive redress for the zoning violations they alleged. See id. Our careful review of the record leads us to conclude that the court correctly applied the law and that its finding that the plaintiffs did not incur special damages as a result of the activity in the buffer zone was not clearly erroneous.

### III

The plaintiffs claim finally that the court improperly burdened their constitutional rights of free association and access to the courts, and their rights to petition the government for the redress of grievances. This claim is without merit.

It is undisputed that the plaintiffs had their lawsuit financed, at least in part, by a major competitor of the defendant. The plaintiffs claim that the court "clearly considered [the] plaintiffs' association with and financing by [the defendant's competitor] as a filter through which it weighed the evidence" and that such consideration "led the trial court to ignore the plaintiffs' overwhelming testimony and other evidence."

The court made three references to the competitor in its memorandum of decision. First, at the conclusion of its statement of facts, the court stated: "The plaintiffs' suit has essentially been financed by . . . a nonparty major concrete competitor of [the defendant] and an asphalt producer. The plaintiffs were clearly unaware that approximately $70,000 in plaintiffs' expert fees, and between $90,000 [and] $165,000 in fees for the three plaintiffs' attorneys, had been incurred as of the end of trial." Second, in the context of discussing the reliability of the model produced by the plaintiffs' expert regarding particulates, the court stated that the expert "made those subjective judgments without visiting the [defendant's] plant site and relying in part upon information from the financier of the suit, [the defendant's competitor]." Finally, near the end of its memorandum

of decision, the court stated: "While [the defendant pleaded] various other special defenses, including, inter alia, unclean hands by reason of [the competitor] financing this litigation, and [the] plaintiffs replied in denial and avoidance thereof, the court need not and does not reach these issues in light of the above."

As to the first statement, it is a factual predicate for the court's discussion of the defendant's special defense of unclean hands, i.e., the third statement. Prior to trial, the issue of whether the plaintiffs had unclean hands on the basis of their alleged solicitation of funds was the subject of a plaintiff's motion to strike and as such was relevant to the court's decision. As to the second statement, it was made in the context of the court's assessment of the weight of the evidence and, as such, was proper. In any event, there is no indication that the court drew adverse inferences against the plaintiffs on the basis of their association with the competitor and, as is shown by its lengthy, comprehensive memorandum of decision, the court did not ignore the evidence. There is no constitutional violation.

The judgment is affirmed.

In this opinion the other judges concurred.