[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Zachary Sachs and Ruth Sachs, own and reside in a house in Wilton, Connecticut adjacent to that of the defendants, David Henwood and Mary C. Henwood. The plaintiffs' property is known as Lot 2 described on Map No. 3630 on file in the Wilton Land Records. The defendants own a separate lot adjoining their own residence, which lot is known as Lot 3 on the said map. The case was referred for trial to an attorney trial referee ("ATR") pursuant to Connecticut General Statutes § 52-434 (a) and Practice Book. § 19-2A, and the ATR submitted a report to which the defendants objected pursuant to Practice Book § 19-14.
As found by the ATR, the defendants own an express easement by grant, thirty feet in width and approximate 290 feet long, over the most easterly portion of Lot 2, the plaintiffs' property. The easement is for CT Page 12242 purposes of ingress and egress from Middlebrook Farm Road to and from Lot 3 of the defendants. In count one of their complaint, the plaintiff's claim that the defendants' construction of an approximately twelve foot wide stone driveway within the easement area and the parking of motor vehicles thereon constitute an impermissible expansion of the defendants' easement which has caused the plaintiff's irreparable harm. In count two, the plaintiffs allege that the construction of the driveway was malicious and performed with the intent to annoy and harass the plaintiffs, constituting a malicious construction pursuant to Connecticut General Statutes § 52-570.
In their claims for relief the plaintiffs, as to the first count, requested a temporary and permanent order restraining the defendants from expanding the use of the easement and from "installing utility easements," claiming damages, and "such other relief as in equity may pertain." As to the second count, alleging malice, the plaintiff's claim a temporary and permanent order restraining the defendants from maintaining the driveway, and damages within the jurisdiction of the court.
The ATR found that the defendants had altered a stone wall on the plaintiffs' property, removed a Shagbark Hickory tree standing within the defendants' easement, installed a stone driveway and parked cars on the driveway. The ATR concluded that these acts were not reasonable and were not as minimally burdensome to the servient estate as the nature of the defendants' easement and its purpose would permit. Kuras v. Kope,205 Conn. 332, 341-42, 533 A.2d 1202 (1987). This conclusion was based upon his finding that there were no improvements on the defendants' Lot 3, that it was grassland and meadow and the defendants did not, either at the time of construction of the driveway or at the time of trial, have the present intention to improve the lot. The ATR determined that the owner of the dominant estate who seeks to expand such estate has the burden of persuasion that such increase is reasonably necessary for the continued enjoyment of the easement and would not unreasonably burden the servient estate, citing Somers v. LeVasseur, 230 Conn. 560, 645 A.2d 993
(1994). He specifically found that the language of the express easement did not grant the defendants any right to park vehicles within the easement area.
In the second count, brought pursuant to Connecticut General Statutes § 52-570, the plaintiffs sought injunctive relief and monetary damages for the defendants' malicious construction of the stone driveway. The ATR found a malicious intent by the defendants as evidenced by their conduct, which included constructing a stockade gate along the southerly end of the accessway which the ATR found served no purpose, removing a portion of the plaintiffs' stone wall, removing plaintiffs' tree within the accessway, placing "No Trespassing" signs on the CT Page 12243 accessway facing the plaintiffs' house, removing surveying stakes which had been placed to delineate the accessway boundary, and sundry other acts. The ATR also found that the defendants had no present intention either at the time of construction of the driveway or at the time of trial, to build a house on the lot to which the easement is appurtenant. For this reason, and although the stone driveway was not illegal in any respect, and complied with all governmental requirements, the ATR found that the driveway served no legitimate purpose, and that the defendants acted with malice in constructing it at that time, with an intent to diminish the plaintiffs' use and enjoyment of their property. Notwithstanding this conclusion, the ATR found that the plaintiffs failed to prove the amount of their damages, and therefore recommended compensatory damages of $1.00. The trier also concluded that upon a balancing of the equities an order requiring the removal of the stone driveway and restoring the property to its former condition was inappropriate under the facts of this case.
The Supreme Court has set forth this court's scope of review of an attorney trial referee's report. The court held that "[a] reviewing authority may not substitute its findings for those of the trier of fact. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [currently § 19-17] . . . The factual findings of a [trial referee] on an issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence on the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted). Elgar v. Elgar, 238 Conn. 839, 848-49, 679 A.2d 937 (1996).
"This court has two tasks to perform in reviewing attorney trial referees' reports. The first task is to determine whether the `referee's findings of facts were supported by the evidence'. The second task is to ascertain whether `the conclusions drawn therefrom were legally or logically correct.'" Guice v. Milk Cookies, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV99 0169843 (August 9, 2000, Lewis, J.). The ATR found in favor of the plaintiffs on both the first and second counts, and recommends that the court issue five separate orders against the defendants. He does not, however, precisely articulate to which of the two counts in the plaintiffs' complaint each order relates. Nevertheless, the court will discuss each of the recommended orders in light of the plaintiffs' complaint and claims for relief. The court will address the legal issues CT Page 12244 raised by each count and begin the discussion with the allegations of the second count.
In the second count the plaintiffs seek an "order restraining the defendants from maintaining the driveway." The ATR and both parties construed this as a claim for an order requiring the defendants to remove the stone driveway and to restore the land to its former condition. The plaintiff's base this claim for relief upon Connecticut General Statutes § 52-570, alleging in their complaint that the construction of the driveway was malicious and performed with the intent to annoy and harass the plaintiffs.[1] Statutory authority for injunctive relief is authorized by Connecticut General Statutes § 52-480.[2]
Some additional facts are relevant to the disposition of the issues. Although the defendants originally began work for the construction of the driveway without proper permits, all necessary permits were later applied for and received. In their application for a driveway permit, the defendants stated "no building construction is planned at this time." Approval was also required by the Inlands Wetlands Commission of the town of Wilton because the easement area is within 100 feet of a brook. After public hearings, approval was granted for a "construction of a house, septic system and driveway and associated grading . . . "The installation of the driveway, and its present existence, was and is lawful in every respect. The easement in question, now with the town approved driveway, is the only legal access to the defendants' Lot No. 3, if it is to be used as a building lot.
"Under certain conditions, damage done by a landowner to the land of an adjoining owner, which at common law raised no liability, is made a legal damage, and a liability to pay that damage is created. These conditions are: A structure erected on the owner's land; a malicious erection of the structure; an impairment thereby to the value of adjacent land; an intent by means of the structure to injure the adjacent owner in the enjoyment or disposition of his land. Briefly stated, [Connecticut General Statutes §§ 52-570 and 52-480] provide: The erection of any structure on one's own land, which impairs the value of adjacent land, shall hereafter create a liability to pay the damages thus caused, when the structure is maliciously erected and erected with an intent thereby to injure the adjacent owner in the use or disposition of his land; and the commission of such injury may be restrained by injunction." Whitlock v. Uhle,75 Conn. 423, 426, 53 A. 891 (1903). "The fact that [these statutes are] in derogation of common law, [disturb] previously existing rights of property, and [create] a new right difficult of reasonable enforcement except in a clear case, demands that its effects should not be extended beyond the evil it was intended to remedy," Id., 426. The court concludes that the facts found by the ATR, the documentary evidence, and the CT Page 12245 testimony in this case are not sufficient to establish all of the necessary elements of Whitlock.
The court will, in this case, consider the stone driveway as a structure, since it was treated as such by the parties and by the referee. The question of whether or not a driveway is a "structure" as contemplated by the statute was not raised at the trial and is not addressed further here.
The issue facing the court is whether the ATR, as a matter of law, could legally and logically conclude that the placement of the stone driveway by the defendants constituted the malicious erection of a structure with an intent to injure the plaintiffs in their enjoyment or disposition of their land. Under the facts found by the ATR, and all of the undisputed evidence of this case, we find that he could not. "Plainly, the real evil [which the statutes were intended to remedy] consists in the occasional subjection of the landowner to the impairment of the value of his land by the erection of a structure which substantially serves, and is intended to serve, no purpose but to injure [the landowner] in the enjoyment of his land." Whitlock v. Uhle, supra75 Conn. 426.
In applying the statutes, the ATR focused on various acts of the defendants over a period of time and especially on the timing of the driveway construction. He determined that the defendants had no intent to construct the house on their lot which the driveway was to serve, either when they installed the driveway or at the time of trial. This analysis by the referee was incomplete. "[T]he intent to injure by the erection of the structure is an intention which must be discovered mainly from the fact that the structure does impair the value of adjacent land and injures the owner in its use, from the absence of the reasonable possibility of any real advantage, whether of profit, protection, or pleasure, in the use of the land, and from the character, location and surroundings of the structure itself." Whitlock v. Uhle, supra,75 Conn. 427. In this case there was not an absence of such a reasonable possibility. As the ATR correctly noted in his report, the clear intent of the creator of the easement, as expressed in the deeds, was to ensure that Lot 3 (defendants' lot) had a means of access to a road and would be a buildable lot. It is equally clear that this was the purpose of constructing the driveway. It is of no moment that the defendants may have had some other motive to do so at that particular time. The intent to injure ". . . relates to the thing done, its purpose and effect, and does not depend on the existence or non-existence of personal spite or ill-will. The intention is not the motive from which it may have sprung, but the established purpose, from whatever motive, to use the land in a manner not justified by its ownership, and forbidden by law. When a CT Page 12246 structure, useless to the owner, injuring adjacent land and its owner, intended to work such an injury, is willfully erected, it is maliciously erected." Whitlock v. Uhle, Id.
The driveway is not useless to the owner, it carries out the established purpose of the easement, and gives the defendants a buildable lot. The defendants' application for a wetlands permit to construct a driveway was approved by the Inlands Wetlands Commission with this language: "The authorized activity consists of construction of a house, septic system and driveway and associated grading adjacent to a wetland and watercourse as described . . .". The Commission goes on to describe a proposed plot plan showing the 12 foot wide driveway within the 30 foot easement leading to Lot No. 3. The defendants also applied for and received a driveway permit from the Public Works Department of the Town of Wilton. The application contained the language: "No building construction is planned at this time." The referee found that this was "convincing evidence of the intention of the defendants at the time the driveway was constructed," not to use the lot for the construction of a house. Mr. Henwood testified in court "that after the conclusion of this litigation, defendants will either construct a house there and sell it, or they will sell the lot to someone to construct a house." The referee interpreted this testimony to mean that the defendants "had no clear intention to construct a house." Again, the ATR has focused on the timing of the driveway construction, as well as the defendants' motives. There is no temporal limitation on the right of the defendants to construct their driveway, except as may be limited by the expiration period of the Wetlands permit itself.[3] The referee however, implies such limitation when he expresses that [T]he usefulness which the driveway as constructedmight have to the defendants if and when they or their successor in title ever construct a house on Lot #3 is irrelevant to this case." (Emphasis in the original.) The purpose of the easement and the driveway, as noted above, was to establish a buildable lot. This provides an obvious advantage to the defendants and their property, and protects the lot's status, for at least five years. This is a legitimate purpose, and the fact that a legitimate purpose could have been carried out tomorrow, does not make it illegitimate if pursued today. Whitlock instructs us that this is so even though the motivation in doing so today may be in question. Indeed, the ATR found the driveway construction "was motivatedat least in part, by malice . . . (Emphasis added). He had an obligation to further analyze the facts and circumstances as the court has done on the record, to discern the legitimate purpose clearly shown. All that need be shown to the trier is a "reasonable possibility" of [a] real advantage, whether for profit, protection or pleasure, in the use of the land . . ." Whitlock v. Uhle, supra, 75 Conn. 427.
To evaluate an intent to injure allegation, one must also look at the CT Page 12247 character, location and surroundings of the structure itself. The character of the "structure" in this case is a stone driveway accessing a residential lot in a residential area. It is located in an easement conveyed for the very purpose of a driveway, in the most easterly end of the plaintiffs' property, as far from the plaintiffs' house as it could be. Although the defendants own a 30 foot easement, the driveway, at its widest point is 12 feet. Thus the location, character and surroundings of the structure is consistent with its legitimate purpose. See Whitlock v.Uhle, supra 75 Conn. 423.
Another prong of the Whitlock test in order to find malicious construction under Connecticut General Statutes §§ 52-570 and 52-480
is an impairment of the value of the adjacent land. The referee found nothing in the evidence, nor did the court find anything in the record, which would be sufficient to support a finding that the plaintiffs proved the value of any impairment of their property. Nevertheless, because he found that the plaintiffs have proven this element, the trial referee awarded nominal damages of $1.00. "Proof of illegal injury to a real property right entitled the plaintiff to at least token or nominal damages even if no specific actual damages are proven." Expressway Associates IIv. Friendly Ice Cream Corporation, 218 Conn. 474, 479, 590 A.2d 431
(1991). However, in this case the ATR awarded nominal damages pursuant to Connecticut General Statutes § 52-570 under which, as the court explained above, there was no legal liability. Accordingly, nominal damages should not have been awarded. As to an order directing the removal of the driveway and restoration of the land to its prior condition under the authority of Connecticut General Statutes § 52-480, the ATR concluded that such a remedy under the facts and circumstances of the case and a balancing of the equities and hardships, would be a wasteful and inappropriate one.[4]
Turning to the first count of the plaintiffs' complaint, the plaintiffs allege that the defendants' construction of an approximate 12 foot wide stone driveway within the easement area and the parking of motor vehicles thereon constitute an impermissible expansion of the defendants' easement, which has caused the plaintiff's irreparable harm. The defendants own an express written easement granted by deed. The nature of an easement must be discerned from the intention of the parties by considering the language of the deed, the situation of the property and surrounding circumstances. Lago v. Guerrette, 219 Conn. 262, 592 A.2d 939
(1991). The interpretation of the easement language in the deed and the question of intent as expressed in the deed is a matter of law. Id., 268. The relevant grant language in the deed conveying Lot 3 to the defendants reads:
 "The owners of Lot #3 shall have the right to enter CT Page 12248 upon so much of Lot #2 as is necessary for the purpose of constructing said accessway, including the installation of culverts, and said easement shall be subject to the perpetual right of the owner of Lot #3 to use said right-of-way for the purpose of ingress and egress to said Lot #3. The owners of Lot #2, their heirs and assigns, shall have no duty or obligation to maintain said accessway."
The ATR interpreted this language as excluding any right to park motor vehicles in the easement area, and the court agrees. The clear purpose of the easement was to provide ingress and egress to Lot #3 so that it would be a buildable lot. The easement language does not allow for the parking of motor vehicles in the easement area, and the court did not find either in the transcripts of the hearings or the exhibits in evidence, any claim by the defendants to the contrary.
The court now turns to the specific recommendations of the ATR, that a judgment enter against the defendants as follows:
"1. Permanently enjoining the defendants from a) using the accessway for the parking of vehicles of any type, b) closing, obstructing or otherwise interfering in any way with the plaintiffs' use and enjoyment of the accessway other than as required to use the accessway for ingress and egress to Lot #3 and for maintenance, repair or replacement, c) using the easement for the installation of utilities; and d) making any unreasonable use of the accessway or any other use which is greater than the nature of the easement and its purpose requires."
The court will, as equitable relief under the first count, enjoin the defendants from using the accessway for the parking of vehicles of any type, and from using the easement for the installation of utilities.[5]
As to recommendation 1b), there was no evidence presented, or claims made, as to the nature and extent of plaintiffs' right to the use and enjoyment of the accessway, nor of defendants' intention to deprive the plaintiffs of such rights, if any. As to recommendation 1d), the nature of the easement and its use and the parameters thereof, are fully set forth in this decision, and there is no evidence of the defendants' intent to go beyond in the use of their easement.
"2. Ordering defendants to procure a survey of the accessway by a licensed surveyor, and to mark the boundary of the easement to the side of Lot #2 with permanent markers as deemed appropriate by the surveyor."
The court will not enter this order. There is no claim for such relief made by the plaintiffs either in their complaint or during the course of CT Page 12249 the hearings. The defendants, therefore, had no opportunity to address the issue as to the cost, necessity or reasonableness of another survey. There is no evidence that the defendants intend to engage in any conduct or perform any acts beyond the boundaries of their easement. In any event, each party is free to place legal and appropriate permanent markers on the boundaries of their respective properties.
"3. Ordering defendants to restore so much of the stonewall along Middlebrook Farm Road as is outside of the Accessway to the condition it was prior to the construction of January, 1998, and thereafter enjoining defendants from causing further disturbance to said wall."
The plaintiffs advised the court that this issue is moot because the plaintiffs have already performed the work. Plaintiffs' counsel, in his brief dated February 28, 2001, waives and abandons recommendation No. 3. No orders will issue in connection therewith. The plaintiffs' wall has been restored, and the defendants' driveway is constructed where it was intended.
"4. Ordering defendants to plant a healthy and mature Shaggy (sic) Bark Hickory tree in a location selected by plaintiffs outside of the accessway, which tree shall be no less (sic) 12 inches in diameter."
This recommendation must be rejected. "Although it is true that when the trial court reviews the attorney trial referee's report the trial court may not retry the case and pass on the credibility of the witnesses, the trial court must review the referees' entire report to determine whether the recommendations contained in it are supported by findings of fact in the report. It is also true that the trial court cannot accept an attorney trial referee's report containing legal conclusions for which there are no subordinate facts. If the attorney referee's ruling was not legally and logically correct, the trial court may reject the report." (Citations omitted; internal quotation marks omitted.) Killion v. Davies, 257 Conn. 98, 102-103, ___ A.2d ___ (2001). If the referee's proposed order in this case is intended to be made pursuant to Connecticut General Statutes § 52-570 under the second count of the plaintiffs' complaint because the tree was removed in conjunction with a malicious erection of the structure, it must fail for the reasons already set forth by the court. If the proposed order is to be made under the allegations contained in the first count, there is no basis for the order. The plaintiffs' claims for relief in the first count contain no request concerning replacement of the hickory tree. Stern v.Medical Examining Board, 208 Conn. 492, 501, 545 A.2d 1080 (1988). Even if such relief could be granted under the court's equitable powers, there was no evidence presented which would justify such relief, nor were the defendants given an opportunity to oppose the imposition of such an CT Page 12250 order. There was no evidence and no finding as to the reasonable value of the Shag Bark Hickory, nor of the cost to plant such a tree, healthy and mature, with a 12 inch diameter, nor indeed whether a hickory tree of such age and dimensions is reasonably transplantable. No evidence was presented by either party on any of these issues. The court notes that neither the plaintiffs nor the trial referee invoked Connecticut General Statute § 52-560, concerning the unlawful cutting of trees on another's property.[6] A plaintiff's remedy under this section is either "for the recovery of damages for the mere unlawful entry upon the plaintiff's land; for the recovery of the value of the trees removed, considered separately from the land; or for the recovery of damages to the land resulting from the special value of the trees as shade or ornamental trees while standing on the land. For a mere unlawful entry upon land nominal damages only would be awarded. If the purpose of the action is only to recover the value of the trees as chattels, after severance from the soil, the rule of damages is the market value of the trees for timber or fuel. For the injury resulting to the land from the destruction of trees which, as a part of the land, have a peculiar value as shade or ornamental trees, a different rule of damages obtains, namely, the reduction in the pecuniary value of the land occasioned by the act complained of." (Citations omitted). Eldridge v. Gorman,77 Conn. 699, 701, 60 A. 643 (1905). "This is the common-law rule . . . the proper measure of damages is either the market value of the tree, once it is severed from the soil, or the diminution in the market value of the plaintiffs' real property caused by the cutting. This common-law rule has been embodied in § 52-560 of the General Statutes." (Citations omitted). Maldonado v. Connecticut Light Power, Co.,31 Conn. Sup. 536, 538, 328 A.2d 120 (1974). Even had the plaintiffs proceeded under Connecticut General Statutes § 52-560, the ATR found no evidence to substantiate the loss of any value of the plaintiffs' land by any of the defendants' actions. Neither was there other evidence of the value of the tree in question.
In addition, the recommended order would have allowed the plaintiffs to select the location of the replacement tree, without regard to how that placement might be related to the changes in the plaintiffs' property rendered by the defendants. A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of adequate remedy at law. Granger v. A. Aiudi Sons, 60 Conn. App. 36, 44,758 A.2d 417 (2000)[7] The ATR made no finding of irreparable harm done by the removal of the tree, nor that the plaintiffs had no adequate remedy at law, nor did the plaintiffs offer any evidence of irreparable harm created by the removal of the tree. Rather they introduced evidence of monetary damages incurred because of the defendants' conduct, but this evidence was found insufficient by the referee, who then awarded nominal damages. Furthermore, the plaintiffs did not plead that they had no CT Page 12251 adequate remedy at law, and indeed had one under Connecticut General Statutes § 52-560,[8] but did not pursue it. Therefore, there was no justification in the evidence or in the pleadings for this recommended order.
"5. Awarding plaintiff the sum of $1 as compensatory damages together with additional compensatory damages in an amount equal to plaintiffs' reasonable attorney's fees and disbursements in the prosecution of the instant action."
As stated earlier in this decision, the ATR should not have recommended nominal damages on the second count, because the plaintiffs did not prove the elements required under Connecticut General Statutes § 52-570. However, the referee found that the parking of vehicles in the driveway is not permitted under the terms of the easement. The allegations in plaintiffs' first count, and the findings of fact in the referee's report in reference thereto, substantiate an award of nominal damages of $1.00 to the plaintiffs on the first count.[9]
The referee goes on to recommend an award of "additional compensatory damages in an amount equal to plaintiffs' reasonable attorney's fees and disbursements in the prosecution of the instant action." Notwithstanding that he recognizes in the body of his report that attorney's fees are not authorized in this case either by statute or contract, the ATR refers to attorney's fees in his fifth recommendation as "additional compensatory damages," based upon a finding of malice. Attorney's fees may be awarded upon a showing of fraud, wantonness or malice. See Gino's Pizza of EastHartford v. Kaplan, 193 Conn. 135, 475 A.2d 305 (1984). The ATR specifically found that the acts of the defendants described in the first count were "motivated, at least in part, by malice." The court cannot disturb this finding of fact. See Elgar v. Elgar, 238 Conn. 839,679 A.2d 937 (1996). Although punitive damages were not sought in the plaintiffs' claim for relief, a review of the trial record reveals that the issue of malice was raised in the case from the very beginning. The defendants were sufficiently alerted during the course of the trial that damages "within the jurisdiction of the court" were being sought, and that these might include punitive damages. Markey v. Santangelo,195 Conn. 76, 485 A.2d 1305 (1985).
Punitive damages in Connecticut are limited to attorney's fees and expenses. Lord v. Mansfield, 50 Conn. App. 21, 717 A.2d 267 (1998). The court will interpret the ATR language to be a recommendation for an award of attorney's fees as punitive damages. However, no evidence was before the ATR as to the amount of reasonable attorney's fees.[10] The proper course of action is for the court to remand the case to the ATR for further proceedings to find, after hearing, the amount of counsel fees to CT Page 12252 be awarded as punitive damages. Kenny v. Civil Service Commission,197 Conn. 270, 278. 496 A.2d 956 (1985).
The court notes that the plaintiff's requested in their memoranda that the court specifically retain jurisdiction for the purposes of ordering the defendants to remove the driveway if Lot 3 is not built upon within a reasonable time. This request is denied. The court's continuing jurisdiction over this matter will be determined according to law.
In summary, the court issues the following orders:
1. On the first count, judgment may enter for the plaintiffs in the amount of $1.00 as nominal damages.
2. On the first count, the defendants are permanently enjoined from using the 30 foot wide easement area from Middlebrook Farm Road to Lot No. 3 for the parking of vehicles of any type, and for the installation of utilities.
3. The case is remanded to the attorney trial referee for further proceedings to find, after hearing, the amount of attorney's fees, if any, to be awarded as punitive damages on the first count.[11]
4. On the second count, judgment may enter for the defendants.
5. Costs are awarded to the plaintiffs.
So Ordered.
D'ANDREA, J.T.R.